No. 2347.

W. D. CLEVELAND *v.* G. R. SIMS.

1. DEED—DESCRIPTION.—A deed should be so construed if possible as to give it effect, and a defective description may be aided by reference to such other portions of the deed as make clear the specific property intended to be conveyed. If the deed refers to another instrument for further description, it is competent to resort to it to ascertain the location and description of the property sold.

2. VARIANCE—PLEADING.—In a suit to recover lot A, a deed was offered in evidence conveying lot seven in connection with an agreement to which the deed referred, and which showed that by agreement between the owners of the block in which lot A was located a new division was made of the lots, and lot A took the place of lot seven, *held,* that there was no variance.

3. FACT CASE.—See opinion for facts held not sufficient to have authorized a finding that a conveyance was made in fraud of creditors.

4. DEPOSITIONS.—There is no statute or practice which authorizes a party to a suit to propound interrogatories to his adversary after trial and judgment, to be used in support of a motion for new trial. A failure to answer them can not be construed into the confession of a fact they were intended to establish.

5. PRACTICE.—The failure of the trial judge to place on record his conclusions of law and fact can not afford ground for a reversal of a judgment,— unless such failure was made the subject of a bill of exceptions.

APPEAL from Navarro. Tried below before the Hon. Sam R. Frost.

*Simkins & Neblett,* for appellant, cited Revised Statutes, arti-

cle 2243; Railway v. Forsythe, 49 Texas, 178; Burford v. Bostick, 50 Texas, 371; Greenleve, Block & Co. v. Blum, 59 Texas, 124; Seeligson & Co. v. Brown & Brown, 61 Texas, 180; Gibson v. Hill, 23 Texas, 77; Littleton v. Giddings, 44 Texas, 109.

*Read, Greer & Greer*, for appellee.

WILLIE, CHIEF JUSTICE.    This was a suit by G. R. Sims against W. D. Cleveland to recover a lot of ground described in the petition as lot A in block eighteen in the town of Dawson, in Navarro county.    On the fourth of April, 1882, H. Halcombe and wife conveyed to A. H. and G. R. Sims lot seven in block eighteen, in the town of Spring Hill, the name of which was afterward changed to Dawson, and on the eighteenth of October, 1882, A. H. and G. R. Sims and the owners of the other six lots in block eighteen signed an agreement changing the position of the lots in that block, and they were made to run lengthwise, from east to west, and front west, instead of as formerly from north to south, fronting north.    The lots as changed were designated by letters instead of numbers, lot A being made to take the place of lot 7, and the other co-owners of the block releasing to A. H. and G. R. Sims all their interest in the same.    On the third of December, 1883, A. H. Sims conveyed to the appellee his half interest in lot number seven in block 18 in said town, adding as follows: "This being lot number seven, according to the subdivision of block eighteen by A. H. Sims, G. R. Sims, F. Smith, J. J. Stansell and G. W. Younger, to which subdivision reference is hereby made."

It was proved that at the date of the last deed A. H. Sims was a member of the firm of Holinger & Sims, who were doing business as merchants in a storehouse situated upon the lot in controversy and had rented from G. R. Sims his interest in the premises, the rent being payable the first of January, 1884. Hollinger & Sims became insolvent in December, 1883, their assets being but little more than a third of their liabilities.    No suits had been filed against them at the time of the conveyance from A. H. to G. R. Sims, but one Sullivan attached their goods on the fifth of December, 1883.    A. H. and G. R. Sims were brothers, but the latter had no interest in the firm of Hollinger & Sims.

Cleveland had an attachment levied December 6, 1882, on the lot in controversy, and bought at the sale made in the attachment proceedings.    The case was submitted to the judge below-

who rendered judgment in favor of Sims, and Cleveland appealed.

When the deed from A. H. to G. R. Sims was offered in evidence, the appellant objected to its being received because of a variance between the description of the lot in the deed and that contained in the petition, which objection was overruled. In this, we think, there was no error. Whilst the lot was called lot "A" in the petition, and lot "7" in the deed, it was perfectly competent to show, by the language of the deed itself, that by lot "7" the lot described in the petition was intended. This wass hown by the agreement referred to in the deed. That agreement showed that lot "A" had taken the place of lot "7" and belonged to A. H. & G. R. Sims, and that after the agreement was made there was really no lot seven in block eighteen, A. H. & G. R. Sims owned no lot in the block except lot A at the time the deed from one to the other was executed. Hence this deed would convey nothing, and would be wholly inoperative if we limited the description of the land conveyed to lot seven in block eighteen. But under accepted maxims of the law we must construe the deed, if possible, so that it may have effect, especially if, from other portions of it the lot intended to be conveyed is clearly indicated. (Broom's Legal Maxims, 490, et seq.) The instrument, in referring to the agreement for a subdivision of block eighteen, made between A. H. & G. R. Sims and others, adopts the description as then given of the lot which fell to the share of the Sims brothers under that agreement, and conveys that lot. By reference to the agreement we see that this lot is lot A in the new subdivision, and construing the deed to convey that lot we make it operative, and carry out the intention of the parties to the instrument. We think that lot A was intended to be conveyed, and there was no variance between the deed and the petition. Both parties to this suit claimed title through Holcomb and wife, and it was sufficient for the appellee to trace back his title to this common source.

It is claimed that A. H. Sims was insolvent when he made the deed to his brother, and that the latter had at the time full notice of the fact. Hollinger & Sims were doubtless insolvent on the third of December, 1883, but there is no satisfactory proof that G. R. Sims was aware of this fact. But one man living in the same community seems to have heard that the creditors of the firm were pressing them, and the proof shows that there were no open demonstrations to this effect. No suit

was insittuted against them till the fifth of December, 1883.
The attorney who brought this suit had been watching them for
two weeks, and yet he does not state that he discovered they
were insolvent or had reason to suspect this till he brought the
suit. G. R. Sims had no business connection with the firm, and
there is nothing to show that he had any better opportunity of
knowing the state of their finances than any other resident of
the community, though he was related by blood to one of the
members. He paid the full value of the half lot purchased, and the
firm continued to rent from him as before; and the reason that
he did not reserve the rent out of the purchase money is fully
explained by the fact that it was not due for some time there-
after. We fail to find in this state of facts such proof of notice
in the appellee of the insolvency of Holinger & Sims as would
justify us in reversing a judgment founded upon an opposite
view.

Some four or five weeks after judgment had been rendered for
the appellee, the counsel for appellant propounded interrogatories
to G. R. Sims, in which, among other things, he asked if Sims
did not know his brother was insolvent at the time he took the
deed from him. A commission issued, and the interrogatories
were placed in the hands of an officer for the purpose of having
Sims's depositions taken in answer to them. Sims refused to
answer, and the appellant afterward made these facts one ground
of an amended motion for new trial, claiming that the failure to
answer was a confession of G. R. Sims's knowledge of the insol-
vency of A. H. Sims at the date of the deed, and that this was to
the appellant newly discovered testimony. The court below
properly overruled the motion. Our statute makes no provision
for the taking of depositions to be used upon a motion for a new
trial. Its entire provisions apply solely to depositions to be used
on the trial of a cause. With no authority to take the deposi-
tions upon an application for a new trial, much less as here, at
a time when no application was pending which the depositions
could possibly sustain, the appellant could not claim that a fail-
ure to reply to his questions was confession of a fact they were
intended to establish. In order to entitle a party to the answer
of his opponent, to interrogatories, and, consequently to a confes-
sion in case of a failure to answer, he must bring himself within
the provisions of the statute giving him the right to take the
answers. Otherwise, it is the right of the interrogated party to
refuse to answer without suffering injury. Besides, no satisfac-

tory reason is given why the plaintiff was not asked as to this matter at or before the trial of the cause. He was not shown to have been beyond the reach of a commission before the trial, nor absent whilst it was going on. Hence no diligence to get the evidence was shown. Nor was it newly discovered. If G. R. Sims, on the third of December, 1883, knew that his brother was insolvent, the appellant must have known that he could, if he would, testify to it on the twenty-third day of June, 1887. But it is unnecessary to multiply reasons why the motion was properly overruled. It had not the shadow of a foundation to rest upon.

This court has already determined that you can not revise the failure of the court below to place its conclusions of law and fact in the record unless the matter is made the subject of a bill of exceptions. (Supreme Commandery, etc., v. Rose, 62 Texas, 321.)

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Opinion delivered November 15, 1887.