### R. STRATTON v. WEST & BENNETT.

Decided December 18, 1901.

**Water Rights—Deed—Construction.**

In construing a clause of a partition deed having reference to the rights of
the parties to the use of water in a system of irrigating ditches on the land,
weight should be given to the conditions which existed at and before the execu-
tion of the deed. See construction of a water clause.

Appeal from Kinney. Tried below before Hon. J. M. Goggin.

*Joseph Jones* and *J. S. Morin,* for appellant.

*Floyd McGown* and *C. C. Clamp,* for appellees.

JAMES, CHIEF JUSTICE.—The amended original petition of ap-
pellant alleged that he owned and used as a hay farm, orchard, etc., a
tract of 316 acres of land in the Dolores Soto de Beales 11-league
grant in Kinney county, and near its southwest boundary line, and
owned also a dam and irrigation ditch and system beginning with the
dam in Las Moras Creek, about the middle of the grant, and running
on the east side of the creek down to and over plaintiff's farm, the same
being a well constructed, defined and maintained ditch, capable of car-
rying, and which does at all times when not molested, carry a large
quantity of water from said dam to the farm, which is used to irrigate
it for the purposes aforesaid; that said district is arid, and fruit rais-
ing and hay growing and farming generally is practically impossible
without irrigation; that plaintiff's farm has been irrigated and culti-
vated by means of said dam and ditch from time immemorial.

That on June 3, 1892, the said Dolores Land and Cattle Company
owned said grant and cultivated said farm with said ditch, and at said
time said company partitioned said grant, R. F. Alexander receiving
the said farm, together with said dam and ditch and irrigation system as
appurtenant thereto and as a part thereof; that the land above said farm
on the creek, and through which said ditch ran went to other parties;
that Alexander at once went into possession and use of the farm, ditch,
and dam, and so continued without hindrance until August 3, 1893,
when he sold and conveyed the farm to plaintiff, together with the
dam and ditch as appurtenant thereto and as part thereof, and that from

that time down to February 10, 1901, plaintiff has continuously possessed and used the farm, ditch, and dam to the exclusion of everyone else; that on the last named date defendants entered upon and took possession of plaintiff's ditch, and excluded plaintiff therefrom, and cut said ditch at a point just above his farm, and again at a point about two miles above said farm, and at both places diverted the water to the total exclusion of plaintiff, and continued to do so until the temporary injunction was granted plaintiff herein, to his great and irreparable damage (special damages being alleged); that plaintiff and his grantors have had peaceable and adverse possession of the dam, ditch, and system, using and enjoying the same for more than ten years. The prayer was for perpetuation of the injunction, for the damages, and general relief.

The judgment recites that after hearing the evidence the court was of opinion that defendants have the right to divert a reasonable amount of water from the ditch for the purpose of irrigating their tillable land abutting the ditch, and conveying water to the tank situated upon certain land conveyed to defendants by Pratt & Hays, but they have no right to divert the water from said ditch at a point above the Stratton farm, and conveying the same to ground tanks or ditches upon the land conveyed by Alexander to defendants, or to convey water from said main ditch upon lands to the south and east of plaintiff's land, and decreed accordingly, amending the injunction.

The material facts are as follows: Prior to June 30, 1892, the 11-league grant was owned by the Dolores Land and Cattle Company and R. F. Alexander as tenants in common. On that date they had a partition by deed, by which Alexander got those subdivisions on the map attached hereto, marked "A," and the company got those marked "Dol."

The trial court found as a fact that for many years prior to said partition, and at that time, the Las Moras Creek had been diverted into a system of irrigation ditches on its east side, and running nearly parallel with the creek through subdivisions 10, 9, and 8, and its waters had been used for the purpose of irrigating such land as was subject to irrigation from the ditches, and also for the purpose of watering the stock running in the pastures inclosed in said subdivisions, and that the main ditch divided upon subdivision 9 just north of the Stratton farm,—one branch running down and across said farm, and the other bearing to the southeast, connecting with an artificial tank for the purpose of filling such tank in subdivision 9.

The court also found that prior to 1892 two ditches other than the above one now in use had been constructed and used for the purpose of irrigating the land now belonging to defendants, lying between the ditch now in use and the Las Moras Creek, but that in 1892, when the partition deed was made, and for about eight years prior thereto, neither of said two ditches had been used; that at many places the ditch now in use is of easy access for cattle to water, but that defendants maintain a wire fence parallel with, and about 300 varas east of it, extending from the railroad right of way south, which prevents cattle from reaching

the ditch or the creek, which fence was constructed before the partition, and has so remained ever since; that prior to the partition the Dolores Land and Cattle Company had fenced that portion of its land north and east of the Stratton land, thereby cutting off that portion of the land used for pasture purposes, with the tanks thereon, from the farm afterwards acquired by Stratton, with the branch of the ditch leading thereto; that there had been no changes in the fences since; that for the purpose of watering stock on said pasture lands (that is on the lands acquired by Alexander as well as those partitioned to the Dolores Land and Cattle Company) both the owners of said pasture lands had conducted water through the ditches running to said tanks, in order that the cattle running therein might have water.

The partition deed has the following provision relative to water rights: "All water rights and rights to use said ditches are expressly understood to remain and appurtenant to the lands fronting on the said Las Moras Creek or said ditches, and forever shall inure to the owners of the land abutting thereon, without diminution, except that arising from the reasonable use of the water by owners above, and these rights shall extend to and include the right of any owner to clean, keep open, and repair said ditches on any lands above him, her, or it included within the Dolores grant."

Alexander in August, 1893, sold the tract of 316 acres marked "Stratton" on the plat to appellant by deed which contains the following

clause: "And it is understood and agreed that this conveyance guarantees to the said R. Stratton the same rights to the water and ditches on the Dolores grant that were secured to me in the deed of partition. * * * And it is also understood that the said R. F. Alexander reserves the right to the ditches, and to convey water across the land hereby conveyed to other lands below if so desired."

Alexander in March, 1896, conveyed to defendants West & Bennett the balance of the lands he acquired in the partition; and in December, 1899, they by purchase became the owners of all the subdivision 9,— also held by lease all other lands owned by the Dolores Land and Cattle Company on the east side of the creek.

The court found also that another artificial tank on subdivision 8, southeast of the Stratton farm, had been enlarged by defendants since they bought the land, and that by running the waters of the creek through said ditches as originally constructed and used were filling the first tank on No. 9, and thence conducting the water through ditches as originally constructed over subdivision 9 and 8 into said second tank. As the decree perpetuates the injunction as to this second tank for other reasons, and as there are no cross-assignments, we need notice it no further in this opinion.

Appellant's brief is founded in part upon what he claims are mistakes in the court's findings of fact. Before proceeding to the law of the case, these matters of fact should be settled. It appears to be claimed that there is no testimony upon which to base the fact that the lateral ditch going from the main ditch in question to the tanks was in use before and at the time of the partition for the purpose of supplying water for stock in the pasture. The testimony of Hodges, Alexander, and Terasas indicates that such was the fact. There is testimony that the owners long prior to the partition and at that time had the pasture fence so adjusted as to keep stock from the ditch and creek, and to supply water to the pasture used this lateral. It is not for us to substitute our views of the evidence resolved by the trial judge, where there is testimony in favor of his finding. There is also testimony that the ditch in question had been to some extent used, and was being used, to irrigate tillable lands above the Stratton farm. And at that time, and for a long time previous, all ditches leading from the creek had ceased to be used, except the one in question. Under these circumstances the partition deed was made. It stipulated that each and all of the subdivisions to be allotted shall front on the Las Moras Creek, and run to back lines of the grant, to give the back lands access to the creek; and following this provision is the clause defining future water rights.

The evidence is that the lands apportioned above the Stratton farm are only in small part capable of irrigation, and that the rest of the lands were adapted only to grazing and stockraising.

*Opinion.*—1. The provisions of the partition contemplated that the back lands should have access to water, and this could have been with a

view to watering stock only. Of course, as appellant contends, the fences could possibly have been, and can now be, so adjusted that stock could water at the ditch or creek, and it was and is not absolutely necessary for the owner of the back lands to conduct water to tanks in pastures for that purpose. The conditions, however, which existed at the time and before, are entitled to weight in arriving at what was intended and contemplated by Alexander and the Dolores Land and Cattle Company when they stipulated with reference to their future water rights. It can not be denied that, being the owners, they could agree as they chose in reference to this.

Appellant insists that this water clause has reference only to ditches taken directly out· of the creek, below the main ditch in question, and above Stratton's tract, and as to this main ditch, it was constructed and intended exclusively to conduct water to appellant's farm, and he is entitled to have it unmolested by anyone throughout its entire length,— the only limitation upon such right being the right of the upper owners to take water from the creek by ditches below where appellant's ditch leaves the creek, and above his farm; that, with this limitation, after the water passes into the ditch in question it becomes a part and parcel of his farm, just as if it was taken out of the creek at his farm.

This contention we can not sustain without doing violence to the very terms of the clause. It includes all ditches, and we can not exclude from its operation the only ditch leading from the creek in actual existence and use at that time. We therefore conclude that as far as appellees' right to the use of the waters of the ditch for purposes of irrigating lands abutting on the ditch is concerned, the judgment must be approved.

2. The next question is in reference to the judgment allowing appellees water from this ditch to fill the tank. This, in view of the facts as determined by the trial judge, we must also sustain. The water clause under consideration is broad, and does not limit the use to irrigation. The owners made this contract in view of conditions then existing. The pasture inclosing the back lands was then, and had for a long time been, fenced off from the water, and supplied with water by means of the lateral ditch. Convenience doubtless had dictated these conditions, and the future use of the water in this manner was not excluded by the partition agreement, as naturally would have been the case, with these conditions before the parties, if they had not intended them to continue as they were. Evidently, and as the court appears to have found, the fences were constructed to separate the pasture land from the irrigable land, including the land afterwards acquired by Stratton.

In the partition, subdivision 9, upon which was the first tank, was allotted to the Dolores Land and Cattle Company, and No. 8 with the second tank, to Alexander, both being then in a pasture segregated from the ditch by a fence, and this lateral furnishing water, or adapted to furnish water, to both tanks,—the pasture containing no other water.

It can hardly be presumed that they contemplated depriving their lands of this water supply, in view of these circumstances, without some expression to that effect. On the contrary, they must be taken to have meant by "ditches" the only ditches then in use (the others having long before been discontinued), the main and this lateral ditch.

The judgment is affirmed.

*Affirmed.*

Writ of error refused.