### ,W. B. LATTA ET AL. v. E. T. SCHULER.

#### Decided February 6, 1907.

**1.—Deed—Deficit in Acreage—Contract—Evidence.**

Where, in a suit upon notes given for the purchase money of land, the defendant had been allowed to testify as to his understanding of the acreage of the land and as to misrepresentations of the vendor and his agent concerning the same, letters written by the vendor to his agent and to his attorney stating fully the terms of sale and which were exhibited to the vendee before the purchase was consummated, were admissible in evidence to show that there were no misrepresentations by the vendor or his agent as to the acreage.

**2.—Ambiguous Instrument—Evidence.**

An ambiguous instrument should be read in the light of the surrounding circumstances relating to the subject matter, and parol evidence consistent with the writing may be used to ascertain the intention of the parties.

**3.—Sale in Gross—Evidence.**

Evidence considered and held to support a finding that a sale of land was made in gross and not by the acre.

Appeal from the District Court of El Paso County. Tried below before Hon. J. M. Goggin.

*Richard F. Burges,* for appellants.—All preliminary negotiations,

whether written or oral, which have led to the execution of a contract are deemed to have been merged in it, and the contract must be taken as expressing the final views of the parties. Gonzales College v. McHugh, 39 Texas, 347; Milliken v. Callahan County, 69 Texas, 210; Alamo Mills Co. v. Hercules Iron Works, 1 Texas Civ. App., 691.

When parties agree upon a gross price for an estimated quantity of land and there is a material deficiency or excess in the quantity which was unknown to the parties and which if known would probably have prevented the agreement, equity will afford relief by giving just compensation for the excess or deficiency. O'Connell v. Duke, 29 Texas, 300; Ladd v. Pleasants, 39 Texas, 416; Wuest v. Moehrig, 57 S. W. Rep., 864; Wheeler v. Boyd, 69 Texas, 293; Culbertson v. Blanchard, 79 Texas, 486; Yarzombeck v. Grier, 32 S. W. Rep., 236; Daughtrey v. Knolle, 44 Texas, 455; Bennett v. Latham, 18 Texas Civ. App., 406; Smith v. Fly, 24 Texas, 345; Lancaster v. Richardson, 13 Texas Civ. App., 688; Harrison v. Talbot (Ky.), 2 Dana, 258; Hays v. Hays (Ind.), 25 N. E. Rep., 600.

The deed being unambiguous on its face and being the formal evidence of the contract, could not be qualified by the oral and written negotiations leading up to the contract. Gonzales College v. McHugh, 39 Texas, 347; Milliken v. Callahan County, 69 Texas, 210; Alamo Mills Co. v. Hercules Iron Works, 1 Texas Civ. App., 691; Weaver v. City of Gainesville, 1 Texas Civ. App., 288; Rubrecht v. Powers, 1 Texas Civ. App., 284.

*Beal & Kemp,* for appellee.—That the judgment should be affirmed, cited: Barnes v. Lightfoot, 62 S. W. Rep., 564; Daughtrey v. Knolle, 44 Texas, 457; Wheeler v. Boyd, 69 Texas, 298; Weir v. McGee, 25 Texas Sup., 31; Rich v. Ferguson, 45 Texas, 398; Smith v. Fly, 24 Texas, 349; Hynes v. Packard, 92 Texas, 49; Tenison v. Patton, 95 Texas, 284; Mather v. Barnes et al., 146 Fed. Rep., 1001.

NEILL, ASSOCIATE JUSTICE.—E. T. Schuler sued W. B. Latta to recover the aggregate amount of $8,166.66 due on four promissory notes made by the defendant and owned by the plaintiff, and to foreclose a vendor's lien on certain real property for which the notes were made for a part of the purchase money. After the suit was filed, the Woodlawn Real Estate and Improvement Company, who claimed an interest in the land, was made a party defendant for the purpose of foreclosing the lien as against it.

Each defendant answered admitting the execution of the notes and the existence of the lien but disputed plaintiff's right to recover: Because, (1) the consideration for which the notes were executed had failed in part by reason of the fact that the grantors agreed to and pretended to sell Latta two tracts of land containing in the aggregate two hundred and ninety-four acres, less any portion that might have been lost by reason of the action or change of course of the Rio Grande River; and (2) the consideration had wholly failed in that plaintiff and his co-grantor had falsely, fraudulently or mistakenly represented to defendant, Latta, that the two tracts of land contained two hundred and ninety-four acres; but claimed there might be a shortage in acreage

where the river had cut into the tract, and to guard against such contingency they provided in their deed to him that they should not be liable for any land so lost by the action of the river, and that Latta investigated the course of the river and satisfied himself that its course had not materially changed, and acting on plaintiff's representations that the tracts contained two hundred and ninety-four acres bought them, paying one-third cash and executing his notes for the balance; that the price agreed upon was based on the claimed and supposed acreage of two hundred and ninety-four, and that he would not have bought had he not believed the tracts contained that number of acres; that the present course of the river was the most southerly followed by it within fifty years or at any time since the issuance of the original patent to the land; that an actual survey showed that same was short about seventy acres of the acreage claimed by plaintiff, and that the tracts had never at any time contained anything like the acreage claimed, and that the representations of plaintiff that they contained two hundred and ninety-four acres were falsely and fraudulently made to deceive defendant Latta, or, if not, the same were made in mistake by the plaintiff. The answer contained allegations showing that it was impossible to rescind the sale; and a prayer for cancellation of the notes and vendor's lien, which was accompanied by a tender of any amount which might be found by the court to be due to the plaintiff on the notes.

The plaintiff filed in reply to defendants' answer a supplemental petition denying that any false, fraudulent or mistaken representations were made to defendant Latta in reference to the acreage of the tracts or in any respect whatever; that Latta was at the time of the purchase living within a short distance from the land, and that plaintiff was a nonresident of the State and had never seen the land, and that in buying defendant risked the quantity, it being a sale in gross and not by the acre; that the land was conveyed by metes and bounds and that there was an express stipulation in the deed against warranty as to the acreage; that if there was any shortage in the acreage it was due to the action of the river and in the least valuable part of the tract and that the remainder of the land was worth the purchase price; that defendants took possession of the land, induced plaintiff to execute releases to portions of it and were estopped from attacking said sale.

The case was tried before the court without a jury and resulted in a judgment in favor of plaintiff for the full amount due on the notes, with interest and attorney's fees, as provided for in them, for costs and foreclosure of the vendor's lien as prayed for.

The facts are practically undisputed and will be stated so far as necessary in considering the assignments of error, the first of which complains that the court erred in admitting in evidence a letter from E. T. Schuler to A. P. Coles which is as follows:

Birmingham, April 27, 1901.

Mr. A. P. Coles,
El Paso, Texas.
Dear Sir:
"Your telegram, also a letter of the 17th was duly received during my absence from the city. I have forwarded the necessary documents,

including an abstract of the Flores tract, to Messrs. Davis, Beall & Kemp, of El Paso.

"I also find that I sent Messrs. Davis, Beall & Kemp an abstract in 1890, of both the Leahy and Flores tracts, so that between the two abstracts, presuming that they will be able to find the one sent in 1890, they will be able to have a complete abstract brought down to date, with little or no trouble, or expense. I have advised them that we are to receive $24,500.00 for the Tolley tract, which is made up of the Leahy and Flores, regardless of the number of acres it contains; one-third of which is to be cash, and the remainder divided in four equal notes, due on or before one, two, three and four years respectively, and bearing 6 per cent interest from date, payable annually, notes to be secured by mortgage on the property. As the two-thirds only of the property belongs to me, and one-third to Mr. Perry, I have instructed them to divide each payment into two notes, one for two-thirds and the other for one-third, that is, two-thirds of the amount payable to myself and one-third of the amount payable to Mr. Perry, both secured by one mortgage. They are to be allowed to divide the property and sell it, the entire proceeds of all sales to be applied toward the payment of the balance due. Two-thirds of the proceeds of each sale to be applied toward the payment of my notes, and one-third toward the payment of Dr. Perry's notes. The selling price of any part of the ground is to be approved by myself and Dr. Perry before a release is signed. It is my understanding that we are to receive so much money, that is, $24,500.00, for the Leahy and Flores tracts that were conveyed to us and that we have titles to regardless of the number of acres that a survey may show contained in them. I also want it understood that a map of the property showing the way in which it is cut up and offered for sale to be supplied Dr. Perry and myself, one copy for each of us, and would like to have you, when this map is made, indicate on the same the proportion of the total selling price fairly represented by each separate tract according to the location and the lay of the land of the same.

"You mention turning over the proceeds of sales less 10 percent. This, I would not be willing to agree to. They should turn over the full amount of each and every sale. The notes to be so drawn as to indicate that the balance due is a part of the purchase money.

"I have addressed my letter enclosing the document to Messrs. Davis, Beall & Kemp. If the firm name has changed in any way, will you kindly see that they call for the letter as addressed?

"I am sending a copy of this letter to Dr. Perry requesting that he write you approving of same, and giving any additional instruction that he may think desirable. All terms and conditions of sale will apply to both of our interest, and all proceeds to be divided, two-thirds to myself and one-third to Dr. Perry.    Yours truly,

E. T. Schuler."

And the second, of admitting in evidence a letter from Schuler to Messrs. Davis, Beall & Kemp which is as follows:

"Birmingham, April 27, 1901.

Messrs. Davis, Beall & Kemp,
    c|o Judge Kemp, El Paso, Texas.
        Gentlemen:

"Dr. Perry of Winfield, Kansas, and myself have sold, through Mr. A. P. Coles, the two tracts of land for $24,500.00 that we purchased from Leahy and Flores, and which contained at the time, about two hundred and niney-four acres as surveyed. This sale is so much for the tract, regardless of the number of acres contained, one-third of the amount is to be cash, and the balance to be paid by four equal notes due on or before one, two, three or four years, and bearing interest at 6 percent from date, same payable annually. The notes to be secured by mortgage on the property, Two-thirds of the property belongs to me, and the other third to Mr. Perry. Each time-payment is divided into two notes, one for two-thirds of the amount payable to myself and the other for one-third of the amount payable to Dr. Perry. The one-third cash payment to be divided in the same manner. We are to allow the property to be subdivided and sold in small tracts. The entire proceeds of any or all sales to be applied toward the payment of the balance due as represented by the four payments; two notes for each payment.' Two-thirds of each and every sale to be applied on my notes, and the other third on the notes to Dr. Perry.

"The selling price of any part of the ground is to be approved by Dr. Perry and myself before a release is signed. I enclose you herewith papers as follows:

"Abstract of title to the Flores tract.

"Survey of both the Flores and Leahy tracts.

"Warranty deed from J. B. Leahy and Benancia Leahy, and Emanuel Flores and Lenor Flores, to H. B. Schuler.

"A letter from Messrs. Stanton & Stanton dated April 18, 1887, referring to some correction in the record.

"On December 2d, 1890, I find that I sent you an abstract of both the Leahy and Flores tracts, which doubtless you will be able to find.

"Dr. Perry and myself desire you to draw up the notes and mortgages and also the deeds for the transfer in accordance with the above mentioned terms of sale. I presume the notes or mortgages ought to show that the balance due is a part of the purchase money. Upon receipt of the papers as drawn up by you, we will execute them and send them to the State National Bank of El Paso with instructions to deliver upon receipt of one-third of the amount of the notes and mortgages prepared and approved by you, duly executed by the other parties. Upon completion of the papers and receipt of your bill, prompt remittance will be made you.

"I am sending a copy of this letter to Dr. Perry, requesting that he write you approving of the same and giving any additional instructions he may think advisable. All terms and conditions of sale are to apply to both of our interest, and all proceeds to be divided, two-thirds to myself and one-third to Dr. Perry.

            Yours truly,          E. T. Schuler."

"P. S.   Kindly have one abstract to each piece of property brought down to date to be delivered to the purchasers, and return to me all other papers enclosed,"—the ground of complaint being that as all preliminary negotiations, whether written or oral, which have led to the execution of a contract are deemed to have been merged in it and the contract must be taken as expressive of the final intention of the parties, the letters were immaterial and irrelevant to any issue in the case. The deed executed to Latta by his grantors E. T. Schuler and Cornelius Perry, joined by their wives, conveying the property in question and retaining a vendor's lien to secure the notes sued on, after reciting the consideration of $24,500, of which one-third, or $8,166.66 2-3 was cash, and that the balance, or $16,333.33 1-3, was to be paid in four equal payments, evidenced by promissory notes, of which four were made payable to E. T. Schuler, each for $2,722.22 2-9, due respectfully in one, two, three and four years, and four payable to Cornelius Perry, each for $1,361.11 1-9, due as the others, all bearing 6 percent interest from date and providing for 10 percent attorney's fees, after describing the land, stated: "The land intended to be conveyed herein being the same land which is described in deed dated 12th day of March, 1887, and executed by J. B. Leahy, Benancia Leahy, Manuel E. Flores and Lenor S. Flores to H. B. Schuler, and recorded in deed records of El Paso County, Texas, vol. 12, pages 187 to 190;" then, contains the following stipulation:   "But it is expressly stipulated that while the first of the above described tracts was estimated to originally contain one hundred and eighty-three acres, and the second of said tracts to contain about one hundred and twenty acres, that by reason of changes in the Rio Grande, the acreage of said tracts may be more or less diminished, the warranty of this deed is not intended to extend to the quantity of acres, but the deed is intended to convey the actual number of acres, only, as they now exist in said tracts."   This stipulation clearly shows the intention of the parties to the deed was that the actual number of acres only, as they existed when it was made, should be conveyed.   But the defendant, over plaintiff's objection, having testified as to his understanding in regard to the acreage and as to misrepresentations of his grantors and their agent, it was certainly competent to introduce the letters in evidence, in connection with other testimony, for the purpose of showing that the agreement reached by the parties was as expressed in the deed; and that it was not induced by any misrepresentations on the part of the grantors.   Besides, as is asserted in one of appellee's propositions under these assignments, "a written instrument, when there is any doubt whatever of its meaning, may be read in the light of the surrounding circumstances relating to the subject-matter, and parol evidence consistent with the writing, may be used to ascertain the intention of the parties."   Taylor v. McNutt, 58 Texas, 71; Houston Ice & Brewing Co. v. Nicolini, 96 S. W. Rep., 89; Haldeman v. Chambers, 19 Texas, 1; Goldman v. Blum, 58 Texas, 630.

The court did not err in finding as a fact that there was no representation by Coles to defendant that there were two hundred and ninety-four acres in the two tracts, other than as appeared in the printed advertisement.   Coles testified that while, in selling the land, he called for two hundred and ninety-four acres, his understanding was that

Latta bought the body of the land, and took the acreage more or less, and that the grantors could not guarantee any amount. But suppose it should be found as a fact that Coles did represent when he was negotiating the sale and gave the earnest money receipt to the defendant that there were two hundred and ninety-four acres in the tract, such representations, in view of the two letters quoted, were not fraudulent and did not affect the sale. The defendant saw and read both of the letters, in which the language as to the acreage was too plain to admit of construction; after reading them the deed, and notes drawn by the grantors' attorneys were submitted by him or at his request to his attorneys, before they were executed, for their approval; after they were approved, as expressing the agreement between the parties, the deed was executed by the grantors and the notes by the defendant, and such papers delivered and accepted by the parties respectively entitled to them as expressive of the contract between them; no complaint of fraud or misrepresentation was made by defendant, though he knew that there were only two hundred and twenty-four acres in the tracts, until he had sold much of the lands and the notes for the purchase money last falling due had matured. These facts show, or at least warranted the court in finding, that there was no fraud or misrepresentations affecting the sale. This disposes of all the other assignments of error, and requires an affirmance of the judgment.

*Affirmed.*