### HUNT et al. v. EVANS. (No. 6381.)

(Court of Civil Appeals of Texas. Austin. June 22, 1921. Rehearing Denied Oct. 12, 1921.)

1. **Deeds** &ckey;120—**Construed to confer largest estate possible.**

A deed will be so construed as to confer upon the grantee the largest estate possible.

2. **Deeds** &ckey;115—**Land identified by whole instrument.**

Misdescription of land in one part of a deed will not invalidate the conveyance, when the premises to be conveyed can be properly identified by the whole instrument.

3. **Deeds** &ckey;112(2)—**General grant of survey covers entire acreage.**

The general grant of a survey will cover the entire acreage, although only certain specified parts are definitely described.

4. **Deeds** &ckey;111—**Language added to clear up ambiguous description given effect.**

Any language which is added to a conveyance for the apparent purpose of clearing

up either an indefinite or an ambiguous description will be given such effect.

**5. Deeds ☞114(3)—Instrument held to convey entire survey lying in several counties.**

A deed of a survey lying in several counties *held* to convey the entire acreage in all of the counties, though it described it as being only in one county, where there was an added clause to the deed, stating that such survey was located partly in three counties.

**6. Contracts ☞153—Every part of instrument given effect.**

When possible, every part of a written instrument must be given effect.

**7. Deeds ☞109—Wide latitude permitted in evidence of intention.**

Wide latitude is permitted in the introduction of evidence to determine the intention of parties to a deed.

**8. Appeal and error ☞742(6)—Proposition in brief held too general.**

A proposition, "The finding of fact by the court that is not supported by any evidence will be set aside and not construed by the appellate court," submitted under an assignment of error involving several different questions, was too general, and did not specify the particular finding claimed not to be supported by the testimony, and the assignment could not be considered.

**9. Vendor and purchaser ☞85—Evidence held sufficient to show parol rescission of contract under which land was conveyed.**

In an action involving title to land, evidence *held* sufficient to show a parol rescission and cancellation of a contract under which the land was conveyed, or a parol sale back to grantor.

**10. Vendor and purchaser ☞85—Party held equitable owner of land, and entitled to rescind by parol.**

Where M. was indebted to P., and, being unable to pay the debt, offered to convey certain land in satisfaction of the debt to any party P. should designate, and thereafter P. sold the land to H. wholly on credit, with the understanding and agreement that, when H. had paid the amount due P. by M., the latter should make a deed, and the deed was made conveying the land to the wife of H., in consideration of H.'s promise to pay M.'s indebtedness to P., and thereafter M. killed H., and H.'s wife told P. that she could not hold or pay for the land, and he paid her for the work done on the land and improvements, and M. agreed to and did sell the land to T., who paid P., *held*, that P. must be considered as the equitable owner of the land until it was sold to T., and that he acted as such in orally canceling and rescinding the sale to H.

**11. Frauds, statute of ☞129(11)—Parol sale upheld, where grantee pays consideration, enters on premises, and makes improvements.**

Parol sale of land will be upheld, where the grantee pays all or part of the consideration, enters on the premises, and in reliance on his purchase makes or erects valuable improvements.

Appeal from District Court, Tom Green County; C. E. Dubois, Judge.

Suit by S. H. Evans against M. F. Hunt and others. Judgment for plaintiff, and defendants appeal. Affirmed.

Lee Upton, guardian ad litem, and Anderson & Upton, all of San Angelo, for appellants.

Blanks, Collins & Jackson, of San Angelo, for appellee.

KEY, C. J. Appellants' brief contains the following statement, which is conceded to be correct:

"Appellee, C. H. Evans, instituted this suit in the district court of Menard county on the 8th day of August, 1919, against Mrs. M. F. Hunt, Mrs. Elsie McShan and her husband, D. W. McShan, Lee Hunt, Charley Hunt, Pearl Hathcock and her husband, Tom Hathcock, Lela Hunt, Lena Hunt, and Willie Hunt, the last three named being minors, in trespass to try title to section No. 16, certificate No. 2/19, J. Pointevent, situated in the counties of Menard, Concho, Schleicher, and Tom Green, said suit being in the statutory form of trespass to try title, and pleading limitation under the three, five and ten year statute of limitations. The district judge of Menard county appointed Lee Upton, a member of the firm of Anderson & Upton, as guardian ad litem for the minors. By agreement the venue was changed from Menard county to Tom Green county.

"Appellants answered by general denial and plea of not guilty, and disclaimed as to any interest in the north one-half of the land sued for, and pleaded specially their title to the south one-half; that is, that on the 1st day of June, 1905, G. D. McGuffin, being the owner of the entire section, sold and conveyed the south one-half thereof to Mrs. M. F. Hunt, the wife of T. L. Hunt; that the grantees took possession of said premises and established their home thereon; and that thereafter, on or about July 6, 1905, T. L. Hunt, the husband of Mrs. M. F. Hunt, was killed, and left surviving his wife, Mrs. M. F. Hunt, and their children, the other defendants herein. Appellee amended, and, in addition to the allegations in the original petition, alleged a verbal rescission, cancellation, and resale of the south one-half of said section back to McGuffin, making the issues to be tried the record title to the south one-half of section 16, the verbal sale or rescission from Hunt to McGuffin, and limitation. The parties agreed upon common source in G. D. McGuffin and agreed that the south one-half of said section of land was wholly in Menard and Schleicher counties.

"The case was tried on the 27th day of October, 1920, before the court without a jury, and resulted in a judgment for appellee for the land sued for and a cancellation of the deed made to appellant by McGuffin, and against the appellants on the cross-action for the land and rents."

The undisputed proof shows:

"That section 16, certificate 2/19, J. Pointevent, 615.5 acres, in Concho, Menard, Schleich-

er, and Tom Green counties, subsequently reduced to 605 acres, was awarded John Hughes, as an actual settler, February 6, 1903, on his application filed with the county clerk of Concho county, December 4, 1902, and filed in said office December 8, 1902, as grazing land at $1 per acre; that John Hughes and wife conveyed said section 16 to G. D. McGuffin October 23, 1903; that G. D. McGuffin made final proof of occupancy and improvements of said land as assignee December 15, 1905, and filed same in said office December 19, 1905; that said section 16 stands on the records of said office in the name of G. D. McGuffin as substitute purchaser, and the annual interest was paid on said account to November 1, 1917."

Also the following agreed facts:

"(1) That G. D. McGuffin was the common source of title, and that neither party will be required to go back of him in making out the case. (2) That the land described in plaintiff's petition is situated in Menard, Concho, Schleicher, and Tom Green counties, state of Texas; that is, 296 acres in Menard county, 193 acres in Concho county, 58 acres in Schleicher county, and 58 acres in Tom Green county—and that the south one-half of said section is wholly situated in Menard and Schleicher counties. (3) That the plaintiff, J. S. Tisdale, Mrs. E. P. Tisdale, and G. D. McGuffin paid all the taxes due on the lands involved in this suit each year as they accrued from the time they were acquired by the said G. D. McGuffin and that they also paid all interest due the state of Texas on such lands; neither interest nor taxes ever having been paid by either Mrs. M. F. Hunt or her husband, Lee Hunt."

The defendants having disclaimed as to the balance of the land, it is only the south half of the original survey that is involved in this case, which, as shown by the foregoing agreement, is situated entirely in Menard and Schleicher counties. This being the case, when the plaintiff offered in evidence a deed, dated January 19, 1915, from G. D. McGuffin and wife, the common source of title, to J. S. Tisdale, under whom appellee holds title, the appellants objected, because it only purported to convey that part of the original survey situated in Concho county, which objection was overruled, and that ruling is complained of by the first assignment of error.

By the second assignment appellants charge that the court erred in construing that deed to include the land in controversy. The deed is described in the statement of facts as follows:

"Plaintiff next offered in evidence a deed from G. D. McGuffin and wife, Leonora McGuffin, to J. S. Tisdale, dated January 19, 1906, acknowledged on the 19th day of January, 1906, before A. D. Moss, notary public, Concho county, Tex., and recorded in volume 10, page 372, Deed Records of Concho county, Texas, which deed is as follows, to wit: Recites: 'We, G. D. McGuffin and Mrs. Leonora McGuffin, husband and wife, of the county of Concho and state of Texas.' Consideration: 'Nine hundred and twelve and 5/100 dollars, paid by J. S. Tisdale, the receipt of which is hereby acknowledged.' Conveys all right, title, and interest in and to that certain parcel of land in the county of Concho and state of Texas, described as follows, to wit: 'Section 16, certificate 2/19, J. Pointevent, 615½ acres, more or less, awarded John Hughes by state of Texas 12—14—02, and we also transfer all the money paid on account of above land, principal and interest to state treasurer.' Said section 16 lies partly in Concho, Menard, Tom Green, and Schleicher counties."

The trial court held that the deed purported to convey all the right, title, and interest of the grantors in the original section 16, certificate 2/19, J. Pointevent, 615½ acres, awarded to John Hughes by the state of Texas, etc., and appellants challenge the correctness of that construction, and assert that, if it conveyed any portion of that tract of land, it was only that part situated in Concho county, which is no part of the south half of the survey, the land in controversy in this suit.

It is believed that the trial court ruled correctly. Hancock v. Butler, 21 Tex. 804; Farris v. Gilbert, 50 Tex. 350; Cleveland v. Sims, 69 Tex. 153, 6 S. W. 634; Cartwright v. Trueblood, 90 Tex. 535, 39 S. W. 930; Calder v. Davidson, 59 S. W. 300; Hatcher v. Stipe, 45 S. W. 329; Laucheimer v. Saunders, 27 Tex. Civ. App. 484, 65 S. W. 500. The authorities cited support the following propositions:

[1] First. A deed will be so construed as to confer upon the grantee the largest estate possible.

[2] Second. Misdescription of land in one part of the deed will not invalidate the conveyance, when the premises to be conveyed can be properly identified by the whole instrument.

[3] Third. The general grant of a survey will cover the entire acreage, although only certain specified parts are definitely described.

[4] Fourth. Any language which is added to a conveyance, for the apparent purpose of clearing up either an indefinite or an ambiguous description, will be given such effect.

[5] It is true that, while it is first stated that the land conveyed is in Concho county, it is further described by the original section, certificate number, the name of J. Pointevent, the original grantee, and 615½ acres, more or less, awarded by the state of Texas to John Hughes, etc. This latter description covers the entire survey, and therefore, as held in Hancock v. Butler and Cartwright v. Trueblood, supra, it should be construed most favorably to the grantee. Also, the other three rules above stated tend to support the construction that the instrument was intended to cover the whole of section 16. The first part of the description refers to the land as located in Concho county, but it is thereafter declared to lie partly in Concho, Menard, Tom Green, and Schleicher counties.

[6] There is still another rule which applies to the construction of all written instruments, which is that, when possible, every part of the instrument must be given effect. Urquhart v. Burleson, 6 Tex. 502; Moore v. Waco, 85 Tex. 206, 20 S. W. 61; Thompson v. Langdon, 87 Tex. 254, 28 S. W. 931. If the deed in question is construed as contended by appellants, no effect will be given to that portion of the description that describes the land as "section 16, certificate 2/19, J. Pointevent, 615½ acres, more or less, which lies partly in Menard, Tom Green, Concho, and Schleicher counties"; whereas, if the rule just referred to be applied, and effect be given to every clause of the description, the result will be that the conveyance will be held to cover, not only so much of the section in question as lies in Concho county, but its entire acreage. Hence we conclude that, when all of its terms are considered, if the deed be construed alone and without reference to extraneous facts, it should be held to apply to the entire section of land; but, if it should be held that the description in the deed is ambiguous, then we are of the opinion that the extraneous facts justified the court in resolving the ambiguity in favor of appellee.

In the first place, witnesses testified that McGuffin sold the section in question to Tisdale, and that the latter went into possession thereof, and he and those holding under him had had continuous and peaceable possession thereof ever since the date of the conveyance in 1906. If McGuffin had only conveyed so much of the section as was found in Concho county, surely he would not have delivered the whole section to Tisdale, and certainly not the 114½ acres which were never conveyed to Mrs. M. F. Hunt, but constituted an integral part of the north half of the entire section.

Not only so, but Pope testified that McGuffin sold the whole section to Tisdale, and paid him the $400 which Mrs. Hunt and husband had at one time agreed to pay. Tisdale and those who held under him paid the taxes and all interest due the state on the entire section for fifteen years.

[7] Wide latitude is permitted in the introduction of evidence to determine the intention of parties to a deed. Harrison v. Boring, 44 Tex. 255; Latta v. Schuler, 45 Tex. Civ. App. 237, 100 S. W. 166; Stratton v. West, 27 Tex. Civ. App. 525, 66 S. W. 244. And when this rule has been properly applied, and all the pertinent facts developed in this case considered, there is but little supporting the appellants' construction of the deed in question; but, on the contrary, the conduct of the parties and every fact and circumstance shown relative to the land comport with the construction which the trial court gave to the instrument.

[8] The third assignment of error involves several different questions, and the only proposition submitted thereunder is:

"The finding of fact by the court that is not supported by any evidence will be set aside and not construed by the appellate court."

That proposition is too general, and does not specify the particular finding which it is claimed is not supported by the testimony, and therefore we hold that, as presented in his brief, appellant is not entitled to have that assignment considered.

On June 1, 1905, G. D. McGuffin and his wife, the common source of title, conveyed the south half of section No. 16, certificate 2/19, J. Pointevent, original grantee, to appellant, Mrs. M. F. Hunt; but the trial court held that the sale referred to had been rescinded, and therefore the subsequent sale by McGuffin and wife to Tisdale was valid. That holding is assailed by the fourth assignment of error. Upon that branch of the case, the trial court filed the following findings:

"Third. That some time prior to June 1, 1905, G. D. McGuffin, being indebted to one J. R. Pope in the sum of $400, proposed to the latter that, since he did not want to take the south one-half of said section No. 16 in payment of his indebtedness, that if he (Pope) could sell such one-half section of land to some other person or persons able and willing to pay the debt, that he (McGuffin) would make conveyance thereof to such person or persons upon request. That thereafter, in pursuance of this agreement, which was accepted by Pope, the latter contracted to sell the said south one-half section of land to Lee Hunt, the husband of the defendant Mrs. M. F. Hunt, on a credit, the understanding being that the said Lee Hunt would pay the sum of $400 to the said J. R. Pope. That thereupon, at the request of the said Pope, G. D. McGuffin made, executed, and delivered a school land deed of date June 1, 1905, as the same appears in evidence, wherein and whereby the said McGuffin and wife, Leonora McGuffin, conveyed the south one-half of section No. 16, certificate No. 2/19, original grantee J. Pointevent, to Mrs. M. F. Hunt for a recited consideration of $400 and the assumption of the obligations of the original purchaser of said land to the state of Texas, said conveyance being in the form of an indenture signed by McGuffin and wife, and T. Lee Hunt and wife, M. F. Hunt, properly acknowledged and filed for record in the deed records of Menard county June 7, 1905. That, although such deed recited a cash consideration of $400, no such amount was paid, but that the real consideration for the conveyance was the agreement on the part of Mrs. M. F. Hunt and her husband, Lee Hunt, to pay the $400 due Pope by McGuffin.

"Fourth. That upon execution of the aforesaid deed the defendant Mrs. M. F. Hunt and her husband, Lee Hunt, took possession of the south one-half of section 16, erected a few tents thereon, did a little clearing and fencing, purchasing the wire for the fences on a credit from some party in Ballinger. That about July 15, 1905, Lee Hunt, the husband of the de-

fendant, was killed by McGuffin, and she thereafter sent for Pope, stated to him that she could not stay on the lands, and did not want them. That thereupon Pope agreed to cancel and rescind the purchase and sale agreement as hereinbefore shown, and to buy back the lands from her, in furtherance of which · he paid her $40 for the work which had been done on the premises, canceled the $400 indebtedness, which he held against her and her husband on the land, and paid the party from whom she had purchased wire for fencing on time, loaning her $25 with which to move from the premises. That, in connection with the rescission, cancellation, and repurchase as aforesaid, McGuffin agreed that the land might be taken back and that he would see them again and pay the $400 indebtedness to Pope. That immediately after making the agreement as aforesaid Mrs. Hunt and her children, the defendants herein, abandoned the premises, and never made any claim thereto until the institution of this suit. That upon her abandonment as aforesaid G. D. McGuffin went into possession thereof, and on January 19, 1906, sold and conveyed the lands to J. S. Tisdale for $912 cash, out of which he paid the $400 due Pope. That McGuffin and Tisdale, and those holding title under them, paid the interest due the state of Texas and all taxes on the lands; neither interest nor taxes ever having been paid by Lee Hunt, Mrs. M. F. Hunt, or any of the defendants."

[9] As a conclusion of law, the trial court held that the testimony was sufficient to show a parol rescission and cancellation of the contract under which the south half of the section of land in question was conveyed to Mrs. Hunt, or else a parol sale by Mrs. Hunt. The court also held that the plaintiff had acquired title to the land in controversy under the ten-year statute of limitation. Upon the latter question we express no opinion, but sustain the ruling of the court below upon the first question; that is, the question of rescission or parol sale of the land from Mrs. Hunt back to McGuffin. We think the testimony supports the findings of the court upon that subject. J. R. Pope testified that McGuffin owed him several hundred dollars, and, being unable to pay the debt, offered to convey the south half of the section of land in question in satisfaction of the debt, to any party Pope should designate; that thereafter he (Pope) sold the land to Lee Hunt, wholly on credit, with the understanding and agreement that, when he (Hunt) had paid the amount due Pope by McGuffin, the latter would make a deed. As a matter of fact, the deed was made June 1, 1905, conveying the land to Mrs. Hunt, for a recited cash consideration; but the testimony was sufficient to show that the consideration was Hunt's promise to pay McGuffin's indebtedness to Pope.

Practically the only difference between the testimony of Mrs. Hunt and Mr. Pope on that subject was that she testified that, instead of agreeing to pay McGuffin's debt to Pope, her husband did so by transferring to Pope certain notes. In that respect her testimony differed from Pope's; but the trial court had the right to accept the latter, and seems to have done so. Pope also testified that, when McGuffin killed Hunt, Mrs. Hunt sent for him (Pope) and told him that she could not make a living on the land, and did not want it; that he paid her for the work they had done on the place and for wire used in fencing, gave her $25, and loaned her a horse to take her children to her relatives; that McGuffin agreed to sell the land, which he did to Tisdale, who paid him (Pope) McGuffin's debt, which the Hunts were · to pay, and that the Hunts paid no part thereof.

[10] Under the equitable doctrine, which regards substance rather than form, and often proceeds upon the theory that what ought to have been done will be considered as having been done, it would seem that Pope should be considered the equitable owner of the south half of the section of land in question, until it was sold to Tisdale, and that he dealt with the same as such owner, not only in making the sale to Mrs. Hunt and her husband, but in canceling and rescinding the same with the former after the death of her husband. While there are many cases involving questions affecting the parol purchase and sale of land, there seems to be a dearth of authorities on the question of parol rescission or cancellation of a contract for the sale of land. However, in the case of Ponce v. McWhorter, 50 Tex. 562, where the facts were somewhat similar to this case, the court announced and applied the same equitable rule that applies to a parol purchase and sale of land.

[11] According to the testimony of Pope and other evidence bearing upon that question, it seems that the transaction between · him and Mrs. Hunt was equivalent to a verbal sale by her for the purpose of discharging community debts; and if the purpose of the transaction was to cancel community debts, and as a result thereof the land was subsequently conveyed by the McGuffins to Tisdale, and valuable improvements placed thereon, as shown by the testimony, we think the court below decided the case correctly. Parol sale of land will be upheld, where the grantee pays all or part of the consideration, enters upon the premises, and, in reliance upon his purchase, makes or erects valuable improvements. All these requisites of a valid sale seem to appear in this case.

The consideration passing from Pope and McGuffin to Mrs. Hunt was: (a) The cancellation of the total purchase price originally agreed to be paid for the land; (b) the assumption of the payment of the balance due the state; (c) payment by Pope to Mrs. Hunt for what labor and work she and her husband had bestowed upon the premises, followed by possession and reconveyance of the

property by McGuffin to Tisdale and wife, who thereafter made valuable improvements on the premises, held possession of and claimed title thereto, paying interest due the state and all taxes as they accrued, without any adverse claim on the part of Mrs. Hunt or her children for more than ten years.

For the reasons stated, we conclude that the judgment should be affirmed; and it is so ordered.

Affirmed.