GIBSON v. CARROLL. (No. 5516.)

(Court of Civil Appeals of Texas. San Antonio. Nov. 17, 1915. Rehearing Denied Dec. 15, 1915.)

1. DEEDS ⚖➡112—DESCRIPTION—REFERENCE.
Where a conveyance referred to a recorded map for description, such map and metes and bounds of the lot as delineated thereon are a part of the instrument.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 323, 324; Dec. Dig. ⚖➡112.]

2. DEEDS ⚖➡120—CONVEYANCES—EFFECT.
A grantee can acquire no greater title to land than her grantor possessed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 375–393, 401, 407–412, 416–454; Dec. Dig. ⚖➡120.]

3. DEDICATION ⚖➡19, 38—PLATS — DESIGNATION OF STREETS.
A plat of land which sets apart streets to the public is equivalent to a conveyance, and the easement granted is irrevocable.

[For other cases, see Dedication, Cent. Dig. §§ 35, 37–47, 77, 78; Dec. Dig. ⚖➡19, 38.]

4. NAVIGABLE WATERS ⚖➡39 — RIPARIAN RIGHTS—ACCRETION—RELICTION—WHARVES.
The riparian rights of a landowner whose property abutted upon a navigable gulf are those of access, the right to acquire the fee in accretions and alluvion, as well as in land exposed by reliction, together with the privilege of building a wharf.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 21, 53, 82, 103, 112, 117, 127, 239–244; Dec. Dig. ⚖➡39.]

5. EMINENT DOMAIN ⚖➡45—CONDEMNATION.
Water rights can be condemned for public ways, as can any right connected with land.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 94–100, 102, 106; Dec. Dig. ⚖➡45.]

6. DEDICATION ⚖➡53—LAND UNDER WATER—RIPARIAN RIGHTS.
Where a riparian proprietor filed a plat declaring the dedication of a street in land covered by water, which was beyond the boundaries of his parcel, such dedication carried with it the riparian rights, and a subsequent grantee whose conveyance referred to the recorded plat and described the parcel as bounded by the street takes only to the street, and does not acquire any riparian rights.

[Ed. Note.—For other cases, see Dedication, Cent. Dig. § 96; Dec. Dig. ⚖➡53.]

7. INJUNCTION ⚖➡114—TITLE—RIGHT TO.
In the absence of riparian rights, plaintiff is not entitled to enjoin another from building a wharf on the bank of a navigable gulf; the injunction being sought on the ground that it interfered with such rights.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 202–220; Dec. Dig. ⚖➡114.]

8. NAVIGABLE WATERS ⚖➡46 — RIPARIAN RIGHTS—ALIENATION.
Riparian rights may be alienated separately and apart from the land to which they are appurtenant.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 283–291, 293; Dec. Dig. ⚖➡46.]

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by Mary A. Carroll against C. W. Gibson. From a judgment for plaintiff, defendant appeals. Reversed and rendered.

G. R. Scott and Boone & Pope, all of Corpus Christi, for appellant. D. McNeill Turner, Russell Savage, and H. R. Sutherland, all of Corpus Christi, for appellee.

MOURSUND, J. Appellee, Mrs. Mary A. Carroll, applied for an injunction to restrain appellant, C. W. Gibson, from building any wharf or fishhouse, or filling in the waters of Corpus Christi Bay in front of lot 6, block 6, of the beach part of the city of Corpus Christi, which lot was claimed to be owned by appellee, and from interfering with the exercise by appellee of her rights as riparian owner of said lot. Appellee based right to the relief prayed for upon the ground that she was the owner of a lot which was riparian to said bay. She alleged that the two surveys upon which the city was located included no part of the waters of the bay or the land or soil thereunder; that J. Temple Doswell became the owner of the two surveys on October 2, 1849, and on January 20, 1868, caused the map and plan of the city to be made, delineating thereon the blocks, lots, streets, and alleys as they were supposed to exist on the ground at that time, and that this map was thereafter by judgment of the county court ordered recorded in the records of deeds as the map of said city. Appellee's title is set forth in the petition, each of the conveyances containing a description of appellee's premises by lot and block number, according to said map of the city. Appellee alleged that at the time of the dedication of said map, and on the dates of the several deeds referred to in the petition, said lot was bounded and washed by the waters of Corpus Christi Bay, and was then, and ever since has been, riparian to said bay. She alleged further that appellant deraigned title from said Doswell, by conveyance executed long after appellee's lot was conveyed by Doswell; that appellant's lot, which is known as lot 6, water block 7, had not existed as land, and, if it ever had existed as land, it had ceased to exist as such more than 50 years before this suit was filed; and that title thereto was in the state.

Appellant, in his amended original answer, under oath, denied all the allegations of appellee's petition, and specially pleaded, in substance: That the map recorded by Doswell constituted a dedication of the streets, and according thereto appellee's lot was opposite and to the west of appellant's lot, and separated therefrom by a public street 60 feet wide, designated as Water street; that at the time of such dedication Doswell owned all of the property in fee simple and all riparian rights incident thereto, and reserved all such rights in the streets; that after such dedication the lot claimed by appellee was sold, the description being by lot and block number with reference to said map, and by reason of the intervention of

said street became divested of all riparian rights; that said lot was never contiguous to and never abutted on said bay, and the street known as Water street has been in existence since the original dedication, and has been continuously used and occupied as a street; that at the time of such dedication appellant's lot existed as land abutting on the bay; that, if any riparian rights were ever incident to appellee's lot, the same became segregated therefrom by the platting of said city, and the reservation thereof by Doswell in said map, and appellee, and those under whom she claims, having purchased by said map, became estopped to assert or claim any such rights; that appellant's lot has been generally and publicly known for 50 years, and has existed as land for more than 30 years, during which time appellant and those under whom he holds have had possession thereof and paid taxes thereon; that said Water street has since its dedication existed as a well-defined public street, and has been continuously used and recognized as such, and appellee and those under whom she claims have at all times recognized and acquiesced in the dedication and use of said street, and are now estopped to assert any rights beyond the lines thereof.

Appellee, by supplemental petition, denied the allegations of the answer, and particularly that the city had ever taken possession of or accepted that portion of Water street referred to therein, and alleged that there never was any land in front of her property. She also alleged that the city does not claim said portion of Water street, but recognizes her rights; that the deed under which she claims contains no reservations in favor of Doswell, and she pleaded good faith and payment of valuable consideration without notice of any claim on the part of Doswell.

A temporary injunction was granted upon the filing of the petition, and on December 3, 1914, judgment was entered, after trial upon the merits, overruling a motion to dissolve such injunction and perpetuating the same.

The court filed findings of fact, in substance, as follows:

(1) That plaintiff is the owner in fee simple of the parcel of land known as lot No. 6 in block 6 on the beach part of the city of Corpus Christi, Nueces county, and that said lot rightfully fronts on, and is bounded on the east by, the shore line and waters of Corpus Christi Bay, a navigable body of water and navigable arm of the Gulf of Mexico.

(2) That defendant asserts ownership to that portion of the waters of Corpus Christi Bay, and the land and soil thereunder, immediately east of plaintiff's above-described premises, bounded as follows:

"Beginning sixty feet east of the N. E. corner of plaintiff's said lot, in the waters of said bay; thence east one hundred and fifty feet to stake in said waters; thence south fifty feet to stake in said waters; thence west through said waters one hundred and fifty feet to stake in said water sixty feet due east of plaintiff's S. E. corner; thence north fifty feet, in the waters of said bay, to the place of beginning."

That said lot is known and designated upon the map, hereinafter described in finding No. 5, as lot No. 6, water block 7, of said city, and is now so shown upon the maps of the city.

(3) Plaintiff and defendant deraign title under Levi Jones, the original grantee of the two leagues upon which the city of Corpus Christi is located; that the patents to said two leagues contain no express or implied grant of any part of the waters of Corpus Christi Bay, or the land or soil thereunder, but, on the contrary, by express limitations exclude therefrom the waters of and soil under said bay, as is shown by the metes and bounds contained in the patents. The metes and bounds are copied by the court, but it will be sufficient to say that each calls to begin on the bay and to run with the meanders thereof; the courses and distances of the meanders being stated.

(4) Said two leagues were on October 2, 1849, conveyed by said Levi Jones by warranty deed to J. Temple Doswell.

(5) That on or about January 20, 1868, said Doswell, by his substituted agent and attorney in fact, Chas. Lovenskiold, caused to be made a map or plan of the city of Corpus Christi, upon which were delineated the several blocks, lots, streets, alleys, and certain dedicated public places of said city as it was supposed to exist on the ground at that date and time, which map was on July 27, 1874, by judgment of the county court of Nueces county, ordered recorded in the records of deeds of said county; that the lots and blocks as shown upon said map are in like manner shown upon the maps now recognized in the city of Corpus Christi.

(6) That plaintiff's lot borders on and is riparian to the waters of Corpus Christi Bay, and has for the past 50 years reached to and been washed by the waters of said bay.

(7) The lot claimed by defendant is entirely covered by the waters of the bay, and has never within the past 50 years existed as land, but has been a part of the navigable waters of the bay, and covered thereby to a depth of from one to two feet.

(8) That defendant about January 1, 1912, entered into the property claimed by him and began filling up the waters of the bay with dirt and rock, and began to drive piling therein; that defendant intends and is prepared to construct a wharf and fishhouse for his own private use upon said claimed premises.

(9) That the work done by defendant has interfered with the plaintiff in the use of her said lot. The building of said wharf and fishhouse and the filling in of said premises claimed by defendant will deprive plaintiff of the enjoyment of her rights as riparian owner of lot 6, block 6, and will greatly lessen the value of her property.

Briefly stated, the substance of the conclusions of law filed by the trial court is that appellant acquired no right or title by virtue of the conveyances under which he claims, and that appellee, as the owner of a lot in contact with the waters of the bay, was entitled to prevent the erection of any obstructions in the water in front of her lot.

The findings of fact and conclusions of law of the trial court have been attacked in many assignments of error. We shall dispose of the questions of fact and law presented, without stating and discussing each assignment separately.

It is contended that the court erred in that portion of the first paragraph of the findings of fact in which it found that appellee's lot rightfully fronts on and is bounded on the east by the shore line and waters of Corpus Christi Bay, and also in the six paragraphs to the effect that plaintiff's lot borders on and is riparian to the waters of Corpus Christi Bay, and has for 50 years reached to and been washed by the waters of such bay. Appellant says that the evidence conclusively shows that during all the time since the map was made, which is described in paragraph 5 of the findings of fact, appellee's lot has been separated from the bay by the street designated on said map as Water street.

[1-4] We find that the testimony of appellee's witnesses, while in conflict with the maps on record, supports the findings made by the court.

According to the findings of the trial court, there was no land between the east line of appellee's lot at the time Doswell made and filed for record his map of the city, in 1868, or at the time the lot owned by appellee was conveyed to Eliza Sullivan, in 1873; in other words, if the conveyance of the lot to Sullivan be considered without reference to the effect thereon of the map to which it refers, said lot was, in fact, a riparian lot at the time the map was recorded and at the time the lot was conveyed by Doswell; for, as a matter of fact, no street or part of a street actually separated the lot from the water's edge. There was, however, at the time of the trial a street about 60 feet wide, which had come into existence on account of the erection of breakwaters, and the filling in upon the site of Water street as delineated on the map, as well as by reliction. In addition to the construction of breakwaters and the filling in by individuals, it appears that about the year 1907 the city of Corpus Christi had 100 tons of rock put in as a breakwater, and has from time to time filled in upon the site of the street.

As the conveyance to Eliza Sullivan of the lot now owned by appellee refers to the map filed by Doswell for description of such lot, it becomes necessary to consider what effect the making and recording of the map described in the court's fifth finding of fact had with respect to the riparian rights which were theretofore owned by Doswell as the owner of the surveys subdivided into lots and streets. This map shows a street 60 feet wide, named Water street, as existing east of block 6, in which appellee's lot is situated, and a portion of water block 7 as existing between the east line of the street and the shore of the bay, the remainder of said block 7 extending out into the bay. This map also contains the following reservation:

"Except when specially conveyed, all accretions or alluvion in front of water lots and 150 feet from the eastern boundary of Water street is reserved by J. Temple Doswell."

The trial court concluded that, as Doswell had no title to land under the waters of the bay, he could not convey such land, but it does not follow that he could not convey, separately from the land which is riparian to the bay, those rights in and to the shallow waters of the bay which he had as the owner of the riparian land. Eliza Sullivan having accepted a conveyance which referred to a certain map for description, such map became a part of the deed, and the metes and bounds of her lot as delineated on said map became as much a part of her deed as if they had been set out therein. Eliza Sullivan could acquire no greater rights or title than Doswell owned. He had placed on record a map in which he undertook to dedicate a street adjoining the lot conveyed to Eliza Sullivan. A plat which sets apart streets to the public is equivalent to a conveyance, and the easement conveyed is irrevocable. Elliott on Roads & Streets (3d Ed.) § 130. If, in fact, there had been any land lying east of the lot conveyed to Eliza Sullivan, there is no doubt that it would have become a street by virtue of the recording of such map, but the court found that the waters of the bay reached to said lot. Doswell did not own any title to the submerged ground he undertook to make a street, but, as the owner of the lots found by the court to be riparian in 1868, he owned the riparian rights appurtenant to such lots. Among these rights were those of access, of right to acquire the fee in accretions and alluvion as well as in land exposed by reliction, and also the right to build a wharf.

[5, 6] Water rights can be condemned for purpose of public ways, and so can any right connected with land. Elliott on Roads & Streets (3d Ed.) § 239. Such rights can be conveyed for the purpose, and it seems clear that before Doswell filed his map his riparian rights in shallow water adjoining the shore could have been condemned or purchased for road purposes. When he recorded his map showing a street at a place where he had the right to acquire land formed by accretions, alluvion, or exposed by reliction, he conveyed to the public those rights and such others as he had. As there was water at such place when the map was filed, it necessarily follows that, in spite of that fact, Doswell intended to give, and did give, the

right to the public to have a street at said place, which could only be done by the coming into existence of land above the water through one of the methods referred to above or by filling in. It is therefore clear that he dedicated the riparian rights necessary for the purpose to the public in order that a street might be established at that place. As he depicted this street to be, not through the water, but on dry land, it is evident that he intended that kind of a street, and it did come into existence with appellee's consent, and has been used by the public for a number of years. As Doswell had conveyed all his riparian rights to the public in so far as they were necessary to the creation of the street, he could pass no title thereto to Eliza Sullivan by his subsequent conveyance to her, had he attempted to do so. But, having made the map a part of his deed to Eliza Sullivan, his intention not to convey to her any riparian rights is conclusively shown, and the deed should be so construed. If the premises granted are bounded in terms by a public street or road which separates them from the water, they extend only to the center of the road or street, and the grantee is not a riparian owner. Gould on Waters, § 148, and cases cited in support thereof. The map shows that it was never intended for purchasers of lots in block 6 to own and hold riparian rights. It shows clearly that those who might purchase lots had the right, as against Doswell, of filling up upon the premises represented on the map by Water street so it would be like other streets, and it was not the intention that any one lot owner in block 6 could have prevented said premises from being used as a street, but such would be the effect of holding that such lot owner acquired all the riparian rights which Doswell had ever owned as an incident to said lot.

In support of the conclusion that Eliza Sullivan acquired no riparian rights under her deed and that appellee has none, we cite Kenyon v. Knipe, 2 Wash. 394, 27 Pac. 227, 13 L. R. A. 142–145; Miller v. Mendenhall, 43 Minn. 95, 44 N. W. 1141, 8 L. R. A. 89, 19 Am. St. Rep. 219; Grant v. Oregon R. & Nav. Co., 49 Or. 330, 90 Pac. 178, 1099; Bartlett v. Forrest, 12 Wash. 486, 41 Pac. 194; Oliver v. Klamath Lake Nav. Co., 54 Or. 99, 102 Pac. 786; Gilbert v. Eldridge, 47 Minn. 210, 49 N. W. 679, 13 L. R. A. 411; Banks v. Ogden, 2 Wall. 57, 17 L. Ed. 818; Gilbert v. Emerson, 60 Minn. 62, 61 N. W. 820; N. P. R. R. Co. v. S. & H. L. Co., 73 Minn. 25, 75 N. W. 737; Parker v. Taylor, 7 Or. 435; Morris v. U. S., 174 U. S. 196, 19 Sup. Ct. 649, 43 L. Ed. 946; Farnham, Waters & Water Rights, § 724.

[7] As appellee's right to the relief sought is dependent upon the ownership by her of riparian rights, our holding that she has no such rights requires a decision adverse to her, regardless of whether appellant has any

rights in the premises known as lot 6, water block 7. It is therefore unnecessary to enter upon a discussion of the rights claimed by him.

[8] Appellee contends that, in this state riparian rights cannot be alienated separately and apart from the land to which they are appurtenant, and cites Galveston v. Menard, 23 Tex. 349; Rosborough v. Picton, 12 Tex. Civ. App. 116, 34 S. W. 791, 43 S. W. 1033; Hynes v. Packard, 44 S. W. 548; Richter v. Granite Mfg. Co., 174 S. W. 284. In the first case cited the court says:

"This species of property, being land covered with navigable water, embraces several rights that may be separated and enjoyed by different persons, and may become thereby partly private and partly public, as the right to the soil, a right to fish in its waters, the right to navigate the waters covering it, etc. These may be acquired, separately and exclusively, from the proper granting power, or they may be acquired, as it has been held, in England and many of the states, by prescription and immemorial custom. In some countries they are held to be acquired as an incident to the ownership of the adjoining lands, as, for instance, the right of the owner of the land on the shore to extend a wharf across the shore, or even to low-water tide, or to a certain fixed distance. These riparian rights have been held to have been acquired by various modes, as by grant, by statute, by long custom, by prescription, and the like."

This appears to be a clear recognition of the doctrine that riparian rights may be acquired separately from the land by grant or prescription. The next two cases relate only to the title to the land covered by navigable waters, but not to riparian rights. In the last cited case the Supreme Court held a reservation of water rights void, on the ground, as we understand the opinion, that no valid reservation of riparian rights can be made so as to separate the same from the land to which such rights were incident. The court cited and quoted from the case of Risien v. Brown, 73 Tex. 135, 10 S. W. 661. We do not construe that case as sustaining the doctrine that riparian rights cannot be conveyed separately from the land. The holding of the court on that branch of the case, as we understand the opinion, is expressed in the following words:

"The deed from McAnelly to Brown of April, 1866, we think conveyed to the latter title to the land therein described to the middle or thread of the creek. In addition to this, the clause we have referred to, read in the light of all the facts and circumstances disclosed by the record, conveyed to Brown the right and privilege of using the waters of the creek and of controlling the same for the purpose of erecting machinery, and conveyed also to him the right to use the waters of said creek by the erection of a dam across the same, although it should become necessary in erecting such dam to use the west bank of the creek, owned by another person."

The expression from the opinion copied in the Richter Case, we think, was not intended as a conclusion of law, but as an argument that McAnelly's reservation in his deed to Rogan should not be taken to mean that he had not conveyed all his water rights to

Brown, but should be taken as evidencing a desire not to convey to Rogan what he had already parted with to Brown.

We have many cases in Texas which hold that riparian rights may be acquired by prescription, which is based upon the presumption of a grant. Haas v. Choussard, 17 Tex. 588; Baker v. Brown, 55 Tex. 381; Rhodes v. Whitehead, 27 Tex. 316, 84 Am. Dec. 631; Irrigation Co. v. Vivian, 74 Tex. 173, 11 S. W. 1078; Watkins Land Co. v. Clements, 98 Tex. 584, 86 S. W. 733, 70 L. R. A. 964, 107 Am. St. Rep. 653; Martin v. Burr, 171 S. W. 1045. In several of these cases it seems to be taken for granted that such rights can be purchased separately. The validity of reservations of water rights, or conveyances thereof, was recognized, in the following cases by Courts of Civil Appeals: Weynand v. Lutz, 29 S. W. 1097; Stratton v. West, 27 Tex. Civ. App. 525, 66 S. W. 244 (writ of error denied); Metcalfe v. Faucher, 138 S. W. 1114.

In the Richter Case the Supreme Court quoted with approval from the case of Land Company v. Emerson, 38 Minn. 406, 38 N. W. 200, 8 Am. St. Rep. 679, which case was expressly overruled in the case of Hanford v. St. Paul & D. R. Co., 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144, 7 L. R. A. 722, and the latter case has been adhered to by the Supreme Court of Minnesota in many cases.

The judgment of the trial court is reversed, and judgment rendered that appellee take nothing by her suit.

---

⬦⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes