## HUMBLE OIL & REFINING CO. et al. v. MARTARANA. (No. 6599.) .

(Court of Civil Appeals of Texas. Feb. 14, 1925. Rehearing Denied April 29, 1925.)

1. **Appeal and error** ⬸996—**Judgment, based on special findings by jury, may not be set aside, where there is room for reasonable minds to differ.**

Judgment, based on special findings of fact by jury, may not be set aside on appeal, where evidence will support a difference of opinion in reasonable minds as to the conclusion.

2. **Dedication** ⬸44—**Finding, that railroad caused mapping and platting of tract along right of way, as a street, sustained.**

In proceeding to establish dedication of strip to city for use as public street, originally within railroad's right of way, evidence held sufficient to sustain finding that railroad or its successors, or agents caused mapping and platting of addition showing strip as a street, and approved or acquiesced that mapping and platting.

3. **Appeal and error** ⬸1062(2)—**Whether use was permissive, so as to defeat dedication by user, immaterial where evidence established dedication without regard to user.**

Where dedication of tract along railroad right of way as a street was established by evidence regardless of question of user, any errors .by court in refusing to submit question whether use was permissive, pleaded as defense to allegation of dedication by user, would not be material.

4. **Dedication** ⬸19(1)—**Mapping and platting of addition showing street, acceptance by railroad of deeds referring to street, and acceptance of easement in it, held to establish dedication by implication and estoppel.**

Mapping and platting of addition showing street by joint trustee, of property owners and railroad, and acceptance by railroad of deeds conveying property as being in such addition with specific references to street in question, and also of deeds to easement in portion of street for trackage purposes, held to establish dedication as public street by implication and estoppel.

### On Motions for Rehearing.

5. **Appeal and error** ⬸930(1)—**In reviewing jury's findings, evidence most favorable to verdict will be considered.**

In determining whether jury's findings may . be sustained, evidence most favorable to verdict and judgment will be considered, irrespective of appellant's evidence in contradiction of it.

6. **Dedication** ⬸43—**Question as to railroad's chain of title not important in determining dedication of. public street, where no attack was made on title.**

In proceeding by abutting owner to enjoin railroad from dangerous use of street, where issue was dedication of street to city, and neither party was trying to divest other of title, whether railroad relied on a particular contract as link in its chain of title was unimportant. -

7. **Municipal corporations** ⬸671(5)—**Abutting owner's title held sufficient to enjoin dangerous use and obstructing of street.**

In action to enjoin railroad from using street for oil and gasoline tanks and structures which obstructed street, and contained dangerous explosives, abutting property owner held to have sufficient title to maintain suit.

8. **Dedication** ⬸13—**Joint trustee for railroad and property owners could map and plat aduition dedicating street to city.**

Joint trustee for railroad and property owners, who deeded land for use of railroad as roadbed on its east side, and the balance on west side of track to city for public street, and mapped and platted an addition showing strip of land both as railroad right of way and the edge thereof as a public street, held to have acted within his duty as joint trustee. ·

9. **Municipal corporations** ⬸671(5)—**Discrepancies, in chain of title of property owner enjoining improper use of street, immaterial.**

In suit by abutting property owner to enjoin railroad from maintaining dangerous gas and oil tanks as obstructions in street, discrepancies, in field notes in some of deeds constituting his chain of title, held immaterial; the ultimate issue being whether there had been a dedication of the strip constituting the . street to city, as opposed to railroad's claim of title.

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Suit by Tony Martarana against the Humble Oil & Refining Company and another. Decree for plaintiff, and defendants appeal. Affirmed.

Spivey, Bartlett & Carter, of Marlin, and Jno. C. Townes, Jr., of Houston, for appellant Humble Oil & Refining Co.

Baker, Botts, Parker & Garwobd, of Houston, and O. L. Stribling, of Waco, for appellant Houston & Texas Central R. R. Co.

Frank Oltorf, of Marlin, for appellee.

BLAIR, J. Appellee, an abutting property owner on Railroad street in the city of:

---

Marlin, instituted this suit primarily for a mandatory injunction to remove as obstructions in said street certain oil and gasoline tanks and structures in connection therewith, placed there by the appellant, Humble Oil & Refining Company, under a lease contract with appellant, Houston & Texas Central Railroad Company, leasing it as a part of its right of way. He sued in the alternative to perpetually enjoin and restrain appellants from placing and maintaining oils and gasoline, alleged to be high explosives, in the tanks and structures complained of within such close proximity to his property as to endanger it or its occupants, if for any reason he be not entitled to the primary relief prayed for. He also sued in the alternative for damages to his property by reason of the existence of the structures, and the dangerous character of the use of the same, and prayed for general and special relief.

Appellee pleaded a dedication by appellant railroad company, its predecessors, agents, and trustees, of the strip of land in controversy as a public street in the city of Marlin: First, by deed from John T. Flint, joint trustee for both the property owners and the railroad companies, predecessors of appellant railroad company, to the city of Marlin, conveying, among other streets, Railroad street, in consideration of said city of Marlin conveying to the said Flint, trustee, for the use of the said railroads a right of way through the city and over its streets and alleys named in the city's deed to him, which conveyance was alleged to have been made, in so far as the record title or notice to the city was concerned, before the said railroad companies acquired any title to a right of way over the strip of land in controversy. This deed was alleged to be lost, but the acts of Flint, trustee, and the railroad companies in accepting, recording, and acting upon the deed from the city of Marlin conveying its streets to their use and platting of said street were pleaded as an estoppel to deny the delivery of the deed from Flint, trustee, to the city of Marlin, and to deny dedication. Second, by mapping and platting of what is known as Railroad addition to the city of Marlin, showing Railroad street, by John T. Flint, trustee, or his agents, or by appellant railroad company, or its predecessors, or agents; and estoppel to deny mapping and platting by acquiescing in, ratifying, and confirming said mapping and platting of such addition by Flint, trustee, and by appellant railroad company, its predecessors, agents, and trustees, by the acceptance of deeds, conveying to them lots in Railroad addition with reference to Railroad street. Third, by estoppel in pais to deny the existence of Railroad street or the map of Railroad addition showing Railroad street, by the acceptance of a deed by appellant railroad company, from A. Groesbeck, trustee, successor of John T. Flint, as trustee, dated

January 30, 1874, and duly recorded, containing a clause which described the property conveyed with reference to a map or plat of Railroad addition, which was alleged to have shown the existence of Railroad street. In this connection it was alleged that, although the appellant railroad company acquired no title by reason of this conveyance, it received notice thereby of the existence of Railroad street, and cannot now be heard to deny its existence. Fourth, by recognition of ratification and confirmation of the dedication of Railroad street to the public use, as evidenced by a deed from J. L. Scott to appellant railroad company, dated May 26, 1875, recorded in volume L, p. 519, Falls County Deed Records, the same conveying and intending to convey, as therein recited, the necessary width of right of way through that part of Railroad street, and the balance of said street to the free use of the public. Also other deeds of conveyance were pleaded in this connection as further confirmation and ratification of the existence of Railroad street by appellant railroad company. Fifth, by user of said Railroad street by the public generally for a long period of time and by user by appellee as a way of ingress and egress to his abutting property. Appellee pleaded specifically his chain of title and that he and his predecessors in title purchased with reference to Railroad addition and Railroad street abutting thereon. He also pleaded title by the three, five, and ten-year statutes of limitations. He asserted the right to maintain the suit as an abutting property owner sustaining special damages by reason of the obstructions in the said street, and by reason of the dangerous character of the use of the structures complained of.

Appellant railroad company pleaded specifically its title to the land in controversy, and defended that it is a part of its right of way; that the use to which it was subjected was necessary and proper in the conduct of its business; that any use by the public of the property as a street or way was merely permissive on its part. Appellant oil company pleaded its lease contract, and joined appellant railroad company in its defenses to the suit.

The court rendered judgment upon the special findings of fact by the jury and the uncontradicted evidence that Railroad street was a public street in the city of Marlin, and that the structures complained of are in and on said street; and ordered a mandatory writ of injunction to issue requiring appellants to remove the structures within 90 days; also enjoined and restrained appellants from storing or keeping oils and gasoline in the structures pending their removal. The first order is suspended pending appeal, but the latter order is not so suspended. The appeal is from this judgment.

The principal issue involved under the

pleadings and evidence is whether the strip of land in controversy is a public street in the city of Marlin, or whether, it is a part of appellant railroad company's right of way. The following questions and answers of the jury thereto were submitted by the court on this issue:

"(1) Did the town of Marlin receive a deed from Jno. T. Flint, as trustee of Waco Tap Railroad Company, or the Waco and Northwestern Railway Company, conveying to said town the streets and alleys in the railroad addition to said town? Answer: 'Yes.'

"(2) Did the Waco Tap Railroad Company or its successor or successors or agents cause the mapping or platting of said Railroad addition? Answer: 'Yes.'

"(3) Did the Waco Tap Railroad Company or its successors approve or acquiesce in the platting of said Railroad addition? Answer: 'Yes.'

"(4) As originally platted, did the Railroad addition to the town of Marlin show designation of Railroad street along the west side of the railroad and within the 70-foot strip shown in said addition? Answer: 'Yes.'

"(5) Did the Waco Tap Railroad Company and Waco & Northwestern Railroad Company or either of them accept or act upon and recognize as correct any plat or map of Railroad addition showing Railroad street along the west side of the railroad and within the 70-foot strip? Answer: 'Yes.'

"(6) If you have answered the fifth issue in the negative, you need not answer the sixth, but if the affirmative, then answer the following: Did the Waco Tap Railroad Company or the Waco & Northwestern Railroad Company, intend to dedicate to and recognize in the owners of abutting lots and the public the privilege of using for street purposes a way along the west side of the railroad through said addition? (By dedication of a street or way is meant the designation or setting apart of the same by the owner of the ground with the intention to permanently devote same to public use or use of abutting property owners and abandonment of exclusive use on the part of the donor and acceptance of such use by the public or persons intended to be benefited by giving them the privilege of using such premises as a street or way.) Answer: 'Yes.'

"(7) Did the Houston & Texas Central Railroad Company accept, act upon, or recognize as correct any map or plat of Railroad addition showing Railroad street along the west side of the railroad through said addition? Answer: 'Yes.'

"(8) Did the Houston & Texas Central Railroad Company, at any time prior to the date of the deed from S. A. Silverton to Tony Martarana dedicate to and recognize in the owners of abutting lots or the public the privilege of using for street purposes a way along the west side of the railroad through said addition, within the meaning of the definition of dedication contained in the sixth issue? Answer: 'Yes.'

"(9) Are lots 3 and 4 in block 16 of the Railroad addition a part of 11⅓ acres of land recovered by Susan Grundy in cause 999 in which Jno. T. Flint as trustee intervened? Answer: 'Yes.'"

[1] Appellants assert first that the evidence of dedication is of such character as to leave no room for ordinary and reasonable minds to differ as to the conclusion that no dedication of the strip of land as a public street by appellant railroad company, its predecessors, agents, and trustees was shown. Before this court would be authorized to set aside the judgment of the court, based upon the special findings of fact by the jury and the uncontroverted testimony adduced, we must find that the evidence is of such character, on the question of dedication, that there is no room for ordinary and reasonable minds to differ as to the conclusion that no dedication was shown. Hutchens v. Railway Co., 40 Tex. Civ. App. 245, 89 S. W. 25; Lee v. Railway Co., 89 Tex. 588, 36 S. W. 63; Railway Co. v. Gaddis (Tex. Com. App.) 208 S. W. 895; Ferrell v. Traction Co. (Tex. Com. App.) 235 S. W. 531; Railway Co. v. Barron (Tex. Com. App.) 249 S. W. 827. In this connection, appellants assert that the evidence establishes as a matter of law that the land in question is a part of its right of way. Appellants also assign error in this connection for refusal of the court to instruct the jury that the strip of land in controversy was no part of a public street in the city of Marlin. These contentions are not sustained.

[2] As we view the evidence, it is practically undisputed and the question here is its legal sufficiency to support the findings of fact by the jury. It is as follows:

Appellant railroad company is a successor of the Waco Tap Railroad Company and of the Waco & Northwestern Railroad Company, and of John T. Flint and A. Groesbeck, and the Houston & Texas Central Railway Company. Appellant railroad company and these predecessors have since coming into Marlin in 1870 or 1871 continuously operated trains over the railroad where the main line is now situated on the 70-foot strip, including that part of the 70-foot strip in controversy so far as the track is concerned. The track is on the east side of this 70-foot strip. The structures complained of are within the 70-foot strip and on the west side thereof, and on the strip of land found by the court and jury to be Railroad street, a public street in the city of Marlin.

John T. Flint was the joint trustee of the property owners and appellant railroad company's predecessors, in the location and laying out of the depot grounds and the right of way through the city of Marlin. The first evidence of his appointment as joint trustee is found in a written agreement, executed by L. B. Barton and others, dated February 4, 1870, agreeing and providing, in consideration of the Waco Tap Railroad Company changing the site of its depot to their lands, to thereafter deed John T. Flint, as trustee, their said lands in trust, and empowering him to deed first to said railroad company necessary grounds for its depot and for right of way purposes, then to lay off the

balance in town lots and sell them, giving one-half of the proceeds to the railroad company and one-half to said property owners. This agreement was signed by the four property owners. Under their signatures is the following stipulation:

"I hereby convey to the aforesaid company, according to the above stipulations, my lot purchased of John Reed. [Signed] S. I. Parker."

Thereafter, from February 11, 1870, to March 3, 1870, numerous deeds of property owners in the city of Marlin were executed to John T. Flint, trustee, all having the same terms and conditions, and it will be only necessary to set one of them out. The deed from J. E. Wood to Jno. T. Flint, trustee of grantor and Waco Tap Railroad Company, dated February 11, 1870, conveyed six acres of land and reads in part:

"That upon the location by the said company of its railroad depot grounds on the line of the said railroad in whole or in part where it passes through said land hereby conveyed, the said John T. Flint shall convey to said railroad company the right of way across said land with the necessary and usual depot grounds for side tracks and engine house if desired first, and then shall lay off the balance of the land hereby conveyed into town lots for business and dwelling purposes 50 feet front by 150 feet in depth with such fractional lots as may be necessary in subdividing said land, and also with the necessary alleys and streets, which said alleys and streets the said trustee shall convey to the town of Marlin for the use of the public upon condition that the said town of Marlin convey to the said railroad company the right of way through said streets, alleys, or other property belonging to the town of Marlin. And then the said trustee shall sell the said lots and fractional lots for the best price he can at public or private sale, and shall pay over the proceeds of such sales on demand as follows, to wit: To the grantors herein one half of the same, and the other half to the said Waco Tap Railroad Company."

On October 23, 1871, the board of aldermen of the city of Marlin passed an ordinance entitled:

"An ordinance to authorize the mayor to make a deed to John T. Flint, trustee, to certain streets and alleys in the Railroad addition to the town of Marlin."

This ordinance described the streets and alleys to be conveyed by the city of Marlin to Flint, trustee, and recited that the deed to be executed by the mayor was to be delivered to the said Flint "upon his delivery to the mayor of the town of Marlin his deed to the streets and alleys in the Railroad addition, of the same date September 14, 1871, now in the hands of L. W. Goodrich as in escrow."

On the same date, October 23, 1871, in accordance with the above ordinance, the mayor of the city of Marlin executed and delivered a deed conveying to John T. Flint, trustee, the streets and alleys described in the ordinance, which deed recited, "for and in consideration of the delivery to me by John T. Flint of his deed to the streets and alleys in Railroad addition to the town of Marlin, dated September 14, 1871, have granted, sold, etc., unto John T. Flint, trustee," certain therein described streets and alleys. Both the ordinance and the deed from the mayor of the city of Marlin to Flint describe one alley conveyed as follows:

"Also that alley 30 feet wide the entire length of the same from the Oaks property west across Railroad street between Wood and Durr property to the east line of the property deeded by the said Wood to John T. Flint, trustee, at right angles with the first-named alley."

This deed from the city of Marlin to John T. Flint trustee, was filed for record December 20, 1871, and recorded in book L, p. 656, of the Falls County Deed Records. The deed described in said city ordinance as the deed from John T. Flint, trustee, to the city of Marlin, conveying the "streets and alleys in the Railroad addition to the town of Marlin, dated September 14, 1871," referred to as being in escrow, was lost and could not be found. The following agreement concerning it was made between counsel during the trial:

"It is agreed by and between counsel for plaintiff and defendants that the original book K of the Deed Records of Falls County, Texas, was destroyed by fire at the time the court house of Falls county, Texas, was destroyed by fire in October, 1872."

No witness was produced who ever saw this deed. The only other reference to it was the following recitation in an ordinance in Book 3, page 152 of the city of Marlin, bearing date March 31, 1879, and reads:

"The streets and alleys in the middle five acres of block No. 24, southeast of the Public square, deeded by Falls county May 29, 1868, to F. M. Oaks and deed by Patillo and Reed to John T. Flint as trustee, and Flint to the city of Marlin."

The jury found that the Flint deed was delivered. In addition to the above-mentioned trust deeds to Flint, trustee, the appellant introduced a deed from John T. Flint to the Waco Northwestern Railroad Company, dated August 22, 1871, and recorded January 13, 1872, which reads in part:

"Know all men by these presents: That I, John T. Flint, of said county and state holding title to lands as trustee by several deeds of conveyance from I. M. Barton, B. Coone, L. B. Barton and wife, W. L. Patillo and others, Wm. Read and wife, Wm. Shelton and wife, Alex Durr and wife, L. G. Scoggins and wife, and J. E. Wood, for and in consideration that the Waco & Northwestern Railroad Company has agreed to locate and now has permanently located its line of railroad through the lands conveyed to me by said deeds of trust and has permanently fixed the depot to the same at the point designated in said deeds of

trust, do hereby convey and transfer to the said Waco & Northwestern Railroad Company the right of way to construct their railroad through said land, being a strip of land 70 feet wide from the point where it enters the I. M. Barton lower tract N. 40 W. (without variation) to the point where the line goes out at the L. G. Scoggin tract in and through a part of the town of Marlin in Falls county. To have and to hold," etc.

This deed and the various trust deeds of the property owners to John T. Flint, trustee, together with the memorandum of S. I. Parker on the contract, dated February 4, 1870, of Barton et al. to Flint, trustee, supra, and a deed from Falls county to Jno. F. Reed, dated November 3, 1869, constitute the title pleaded by appellant railroad company to its right of way through the city of Marlin, including that portion of its alleged right of way in controversy here. The proof shows the following with reference to the deed from Falls county to John F. Reed and the memorandum of S. I. Parker on the Barton et al. to Flint contract, both of which are relied upon by appellant railroad company as a link in its chain of title, and being the two instruments having to do with its title to the strip of land in controversy. In cause No. 999, in the district court of Falls county, wherein S. I. Parker filed suit against Jno. F. Reed, asserting title to 11⅚₀ acres of land, being the same land conveyed by Falls county to Jno. F. Reed, by deed dated March 3, 1869, and describing the land by metes and bounds. In this suit one Susan Grundy intervened, claiming that Jno. F. Reed had purchased the property in suit with her money, and that he should be held to have taken the legal title in trust for her. John T. Flint, as trustee, intervened in this cause, pleaded the S. I. Parker memorandum above quoted, and prayed the court to compel him to make conveyance of the 11⅚₀ acres in controversy, in accordance therewith. On March 10, 1874, this suit resulted in a judgment divesting Reed and Parker of title to the property, and vesting it in Susan Grundy, with writ of possession. No disposition other than the above judgment was made of the intervention of Jno. T. Flint, trustee. Appellee established title under Susan Grundy, and through mesne conveyances from her to himself.

Appellee asserted in this connection that although Flint, trustee, never acquired title to the particular strip of land designated as Railroad street where it abuts on his property, because Flint and appellants claim under Parker who was divested of title by the above judgment, nevertheless a legal dedication is shown, for the reason that Flint and the railroad companies accepted the deed from the city of Marlin conveying the railroads the use of its streets; and for the reason that said trustee and railroads mapped and platted Railroad addition, showing Railroad street through said addition, or acquiesced in, recognized, or ratified and confirmed such mapping and platting of Railroad addition showing Railroad street.

As to the mapping and platting of Railroad addition showing thereon Railroad street by Flint, trustee, or his agents, or by appellant railroad company's predecessors or their agents, the evidence shows that the trust deeds from the property owners to Flint as trustee, imposed upon him the obligation and duty to map and plat such addition to the town of Marlin, providing for streets and alleys, and that such streets and alleys should be conveyed by the said Flint to the city of Marlin. These trust deeds all contain the following or similar recitations:

"* * * Extended according to a plat made by Capt. Alexander on the line of the road as therein marked about S. 40 E. across the lands of Coone, Parker, and Barton."

These deeds were dated from February 11, 1870, to February 18, 1870.

W. A. Westcott testified that he lived in Marlin from 1874 to 1882, and was county surveyor in 1882, when the appellant railroad company gave him a position. In regard to a map which was introduced in evidence as belonging to Mr. Hunnicutt, and also a map which had been framed and hung in the county clerk's office for a great number of years, he testified:

"I made these copies; they are copies, the original of that I found in one of the old frame buildings on Live Oak street, and I believe it was the mayor's office. * * * It (the original map) was in an old frame and behind some boxes and was moth eaten. * * * The map in the frame, referred to as hanging in the county clerk's office, is one copy I made, and Mr. Hunnicutt has the other copy. At the time I made these copies, I did not have any connection with the H. & T. C. Railroad. * * * I do not know of my own knowledge who made the map that I made the copy from; it was the information that it was the Alexander map. * * * I don't know whether anybody connected with the railroad company or Flint as trustee made the original. I don't know who made it; it was made before I came to Marlin; before 1874. * * * On that map of Mr. Hunnicutt it states that the map made by me was a copy of the original adopted by the city council in 1871, that notation was on it, and that was the information I had, the same as I said about the Alexander map. It was that information that I had that the map was adopted by the city council in 1871, or I wouldn't have put it on the map. If it was adopted in 1871, the time I made the copy was about six years after it was adopted. Railroad addition is printed on that map. That map shows Railroad street as this street (indicating on map); if it shows on the original, it shows on this one, and if it does show on this one, it does on the original; it is just like the one I copied from."

Witness R. S. Hunnicutt testified that he had lived in Falls county 68½ years and in

Marlin 39 years; that surveying was his occupation, and that he was county surveyor after Westcott.

"I have a map that was left in the office by Mr. Westcott. * * * I have had that map in my possession or control since 1882; it stayed in Capt. Martin's office and Goodrich & Clarkson's office. * * * I always knew, where I could put my hand on it. The map I have in my hand is the map I have been testifying about; the map purports to be a copy of the map of Marlin made by R. F. Alexander, copied by M. A. Westcott in 1877. I have never seen the original R. F. Alexander map in my life; this comes nearer being it as any I ever saw. The notation that I find on the bottom of the map is: 'This is a true copy of the original surveyed by R. F. Alexander in 1871, approved by the city council the same year. Copied by M. A. Westcott, 1877.' Over on the side in larger letters, 'Map of Marlin, Falls County, Texas.' * * * I have seen a map in the Houston & Texas Central depot showing Railroad addition, but it didn't show all of Marlin. As to how the map I saw down there compared with this one * * * it was something similar—I couldn't say that was the map, but something similar; they all look alike as to Railroad addition."

On April 8, 1873, a city ordinance read:

"Such grant of right-of-way, was intended to apply to streets and alleys laid off and designated by the survey and map of the town by R. F. Alexander."

The Hunnicutt map was introduced and shows Railroad street, the words "Railroad street" appearing to the east of block 14 and 15, and that such street continues on past block 16. Appellee owns lots 3 and 4, in block 16, abutting on this street. The Westcott map which hung in the county clerk's office was also introduced in evidence, and it shows Railroad street abutting on appellee's property.

Edmund Pierson, who had lived in Marlin for 35 years and had been engaged in surveying most of the time in Falls county since 1886, testified:

"I have in my possession what is called a vellum map of the Railroad addition to the city of Marlin. (The record shows that the map exhibited by this witness was made of vellum cloth). I got this map from Capt. Martin; Capt. Martin was assistant engineer on the railroad when it was built in Marlin, and he was engaged in surveying a while and afterwards became a lawyer. He was employed by the Houston & Texas Central Railroad, and at one time it was called the Waco Tap Railroad; they called it that at first. I don't recall when I got this map from Capt. Martin, his name was Capt. Martin and he is now dead. This map purports to be a map of the Railroad addition to the town of Marlin. I testified yesterday and left with you a map of the Railroad addition to Marlin. I have seen a map of the Railroad addition in the office of the Houston & Texas Central in Marlin. As to whether the map I saw in the Houston & Texas Central Railroad Company station was a vellum map, I will state that I do not remember, I

think it was though—I couldn't say positively but I think it was on vellum cloth. I used that map in the Houston & Texas Central depot in connection with my work as a surveyor. There was no map of the Railroad addition on record, and the city had no compilation map of the whole town and the railroad addition, and all the information we would get, would be from the map at the railroad office. We would go there for information, to know how to locate the lots on the Railroad addition. That was before I got this map from Capt. Martin. I had no necessity to go to the railroad map after I got that map, because that was the same one."

This map shows Railroad street abutting on appellant's property. Said Railroad addition and Railroad street were referred to in the ordinance of the city of Marlin, October 23, 1871, authorizing the conveyance of streets and alleys to Flint, trustee; also the deed from the mayor of Marlin to Flint, trustee, of the same date referred to both the addition and Railroad street. Appellee also introduced an ordinance of the city of Marlin adopting the McNair map in 1899. This map was introduced and it shows Railroad street. The city tax assessor has assessed property as being in Railroad addition since 1899. The structures complained of were built in 1920.

On the above testimony, the jury found that the Waco Tap Railroad Company, its successors or agents, caused the mapping or platting of Railroad addition of the town of Marlin, and as originally platted showed Railroad street along the west side of the railroad within the 70-foot strip; and that the Waco Tap Railroad Company and its successors approved or acquiesced in the mapping and platting of said addition. We think the testimony sustains the jury's findings of fact on these issues.

The evidence as to the acceptance, acting upon recognition of, and ratification and confirmation of any map or plat of Railroad addition to the town of Marlin showing Railroad street through said addition, by appellant railroad company, its predecessors and trustees, is as follows: The ordinance authorizing the conveyance, and the deed from the city of Marlin to John T. Flint, trustee, dated October 23, 1871, conveying to him for the use of the railroads the use of the city's streets, in consideration of Flint's conveying to the city the streets in Railroad addition, both refer to Railroad street and Railroad addition. The trust deeds made it obligatory on Flint, trustee, to make such map and plat of such addition. A partition deed from Flint, trustee, to B. Coon and A. Groesbeck, trustee, successor of John T. Flint, trustee, dated April 24, 1873, recorded January 19, 1874, book K, p. 523, Falls County Deed Records, which recites "as is upon the property described in said deed of trust in the town of Marlin, as will appear by the map of the Railroad addition to the said town." A deed

from Flint, trustee, to Houston & Texas Central Railroad Co., dated November 8, 1871, recorded December 19, 1871, book L, p. 668, Falls County Deed Records, reciting:

"A frontage of 250 feet by 50 feet back on Railroad street out of block 13 being 50 feet frontage off of lots 1, 2, 3, 4, and 5 in said block. Also 50 frontage by 50 feet back, off of lot 1, in block 14 on said Railroad street in the Railroad addition to the town of Marlin."

A deed from H. J. Chamberlain to J. T. Flint, attorney in fact for Houston & Texas Central Railroad Co., dated November 8, 1871, recorded December 19, 1871, book L, p. 669, Falls county Deed Records, reciting the same as the last above deed as to Railroad addition and Railroad street.

A deed from Flint, trustee, to Houston & Texas Central Railroad Co., dated November 18, 1871, recorded book L, p. 670, December 19, 1817, containing a similar recitation to the one last above quoted.

A deed from A. Groesbeck, trustee, to Houston & Texas Central Railroad Co., dated January 30, 1874, recorded January 30, 1874, vol. L, p. 11, Deed Records Falls County, reciting:

"All of which said lots or parcels of land are represented on the railroad map of the Railroad addition to the town of Marlin, to which reference is hereby made for a more particular description."

A deed from John T. Flint, trustee, to R. J. Pidcocke, dated April 18, 1873, recorded in volume K, p. 506, Deed Records of Falls county, selling certain lots in Railroad addition, and reciting:

"And by these presents to grant, bargain, sell, and release to the said R. J. Pidcocke, the following described tract or parcel of land situated in the county of Falls and the state of Texas, to wit: The whole of block nine (9) in the Railroad addition in the town of Marlin as will appear by the map on file in the district clerk's office of said county."

No witness could be found who ever saw or heard of a map of Railroad addition in the district clerk's office of Falls county.

A deed from John L. Scott to Houston & Texas Central Railroad Co., dated May 26, 1875, recorded volume L, p. 519, Falls County Deed Records, reciting, among other things, the following:

"Beginning on the north or northeast line of Block No. (15) fifteen, of Railroad addition of the town of Marlin, where the east line of the eleven and one-fifth (11⅕) acres (awarded to Mrs. Susan Grundy by decree of the district court in the case No. 999, Parker v. Reed) crosses the south or southwest line of Railroad street. Thence with the east line of the said 11⅕ acres, to the north or northeast line of said Railroad street; thence with the north or northeast line of said street to the north line of said 11⅕ acres. Thence with the said north line to the south or southwest line of the said street. Thence with the south or southwest line of the said street to the place of beginning, being a part of the tract deeded to J. Frank Knox and John L. Scott by Mrs. Susan Grundy and by J. Frank Knox to John L. Scott, the same conveying and intending to convey to the said railroad company the necessary width of right of way through that part of said Railroad street, and the balance of said street to the free use of the public, together with all and singular the rights, members, hereditaments, and appurtenances, to the same belonging or in anywise incident, or appertaining."

A deed from John L. Scott to Houston & Texas Central Railroad Co., dated August 25, 1875, recorded volume L, p. 605, Falls County Deed Records, recites:

"In consideration of $100 cash to me in hand paid by the Houston & Texas Central Railway, which has its principal office at Houston, Harris county, Texas.

"All that piece or parcel of land situated, lying and being in the county of Falls and the state of Texas, and described as follows:

"Lots No. one (1) and two (2) in block (14) according to the Houston and Texas Central Railroad Company subdivision of the city of Marlin from 100 feet on Scogin or Commerce street and running back in an easterly direction, one hundred and fifty feet (150) to Railroad street, the same being a part of the (11⅕) eleven and one-fifth acre lot sold by the county of Falls to John F. Reed. The same being decreed by a judgment of the district court of Falls county in its spring term of 1875. And to be the property of Susan Grundy in cause No. 999, entitled Samuel Parker v. John F. Reed, Susan Grundy intervener, it being a part of the north half of the 11⅕ acre tract which was deeded to J. L. Scott and J. F. Knox in the fall of 1875. It being a part of the piece deeded to J. L. Scott by J. F. Knox in 1874, it being the piece of land released by James M. Hart to J. L. Scott in 1875. The land herein conveyed being one hundred feet wide, and one hundred and fifty feet long. And it is bounded on the east by Railroad street, on the south by lot No. 3, on the west by Scogin street, and on the north by Land street."

Appellee purchased his property, lots 3 and 4, block 16 of Railroad addition to the city of Marlin, and with reference to Railroad street. His deed from Silverman, dated March 7, 1912, recited:

"All that certain two lots or parcels of land lying and being situated on the east side of Commerce street in the city of Marlin, in Falls county, Tex., more particularly described as follows, to wit: The whole of lots Nos. 3 and 4 in block No. sixteen, in the Railroad addition to the town of Marlin in Falls county, Tex., as shown and designated on the official map of said town or city of Marlin, Tex., which is hereby referred to and made a part hereof for more perfect description of said lots. Each of said lots fronting 50 feet on east margin of Commerce street and running back 150 feet to Railroad street in said town of Marlin."

[3] All the other deeds in his chain of title from Susan Grundy conveyed with similar

references to Railroad street and Railroad addition. The jury found on the above issues for appellee, and we think the evidence sufficiently supports their findings. We think the above evidence and the jury's findings establish a dedication of Railroad street, independent of appellee's alleged dedication by user. Appellants pleaded as a defense to dedication by user that the use of the street was merely permissive and requested the court to submit this defense for a finding of the jury, which was refused; and whether such refusal to submit this defense may be error is not material, since we are holding the testimony establishes a dedication without regard to the question of user to which permissive use was pleaded as a defense.

Whether the deed of Flint, trustee, to the city of Marlin, conveying the streets and alleys in Railroad addition, standing alone establishes a dedication, we do not find necessary to decide, but the execution of such deed, together with the mapping and platting of said addition showing Railroad street and the acceptance, acquiescence, recognition, ratification, and confirmation of said mapping and platting by appellant railroad company, its predecessors and trustees, as above detailed, does constitute a dedication of the street without reference to user. Smith v. City of Navasota, 72 Tex. 422, 10 S. W. 414.

The Supreme Court, in the case of City of Corsicana v. Zorn, 97 Tex. 322, 78 S. W. 924, quotes the following concerning dedication by mapping and platting, etc.:

"If the owner of land lays out and establishes a town, and makes and exhibits a plan of the town, with various plots of spare ground, such streets, alleys, quays, etc., and sells the lots, with clear reference to that plan, the purchasers of the lots acquire, as appurtenant to their lots, every easement, privilege, and advantage, which the plan represents as belonging to them, as part of the town, or to their owners, as citizens of the town. And the right thus passing to the purchasers is not the mere right that the purchaser may use these streets, or other public places, according to their appropriate purposes, but a right vests in the purchasers that all persons whatever, as their occasions may require or invite, may so use them; in other words, the sale and conveyance of lots in the town, and according to its plan, imply a grant or covenant to the purchasers that the streets and other public places, indicated as such upon the plan, shall be forever open to the use of the public, free from all claim or interference of the proprietor, inconsistent with such use. * * *

"Nor can it be doubted that in purchasing and paying for his lot he purchased and paid for, as appurtenant to it, every advantage, privilege and easement which the plan represents as belonging to it as a part, or to its owner as a citizen, of the town, and that a conveyance of each lot with reference to the map or merely as a part of the town was a conveyance of all these appurtenances as ascertained by the map which is the basis of the town as such and identified with it."

Other well-established principles of law governing this question are as follows:

"Where the owner of real property makes a plat of it, and divides the land into lots and blocks, intersected by streets and alleys, and sells any of the lots with reference to such plan, or where he sells with reference to the map of a town or city in which his land is so laid off, he thereby dedicates the streets and alleys to the use of the public, unless it appears either by express statement in the conveyance or otherwise, that the mention of the street was solely for purposes of description, and not as a dedication thereof." 18 C. J. p. 58, § 43.

"It is not essential that the plat should have been made by the owner of the land; it is sufficient that he recognizes and approves the plat made by another, making sales with reference thereto." 18 C. J. p. 60, § 45.

"But where the question is raised by a person not as a party to the deed, who claims a common-law dedication and exhibits a deed to another as evidence of the dedicator's offer to create, or intention to recognize a public use, then the dedication is purely a question of fact, in reaching which all other relevant circumstances may be considered without infringing the rule against varying writings by oral testimony. The true rule therefore seems to be that where a deed is only one of the circumstances surrounding an implied dedication, all the other circumstances may be considered together with the deed, and the implication, if any, is an implication of fact." 18 C. J. 99, § 112, 3.

[4] These rules apply themselves to the facts in this case. There was a mapping and platting of Railroad addition showing Railroad street as early as 1871. Some person or persons made this mapping and platting. John T. Flint, who at that time was acting as the joint trustee of the property owners and the railroads, was the person upon whom a duty rested to map and plat such an addition, laying out necessary streets and alleys. Such mapping and platting resulted directly to the interest of both the railroad companies and the property owners, for it made more desirable and more salable the lots in such addition, in which lots and the proceeds of the sale thereof both were equally interested. As trustee, Flint made and accepted deeds with reference to a map and plat of Railroad addition and Railroad street; both the railroad companies and the property owners under the trust agreement were beneficiaries of these deeds. Appellant railroad company and its predecessors accepted deeds from the trustee thus obligated to map and plat, describing the property conveyed with reference to a map and plat of Railroad addition. Even the trust deeds referred to a plat of the property conveyed, made by Capt. Alexander. The earliest map or plat showed Railroad street on the west side of the 70-foot strip conveyed as a right of way by the trustee. The track of the railroad was laid on the east side of the strip, strongly indicating that the trustee had, as

the joint representative of both the railroads and property owners, intended that the strip of land be used both by the railroad for trackage purposes and by the public and purchasers of lots as a street. The railroad thereafter accepted deeds conveying property as being in such an addition, and with reference to the particular street in question.

Appellant railroad company accepted deeds to an easement to a portion of this particular street for trackage purposes, and reserving the right in the public to use the balance for street purposes, long after the mapping and platting of such street. Appellee and his predecessors in title purchased with reference to a map and plat of Railroad addition and Railroad street. We think these facts established a dedication of the street in question as a public street at least by implication, and by estoppel to deny a dedication by implication by mapping and platting, and by estoppel in pais by receiving and accepting a deed, reserving in the public the use of a particular portion of the street in question designated on the map as running through the entire Railroad addition.

For other Texas authorities, construing the sufficiency of the evidence to establish a dedication of a street or way, see Preston v. Mavasota, 34 Tex. 684; Krueger v. Gulf, etc., Co. (Tex. Civ. App.) 191 S. W. 151; Gibson v. Carroll (Tex. Civ. App.) 180 S. W. 630; Kaufman v. French (Tex. Civ. App.) 171 S. W. 831; Poindexter v. Schaffner (Tex. Civ. App.) 162 S. W. 22; Clement v. Paris (Tex. Civ. App.) 154 S. W. 624; Pullman v. Houston, 59 Tex. Civ. App. 48, 125 S. W. 69; San Antonio v. Rowley, 48 Tex. Civ. App. 376, 106 S. W. 753; Wiess v. Goodhue, 46 Tex. Civ. App. 142, 102 S. W. 793; Corsicana v. Anderson, 33 Tex. Civ. App. 596, 78 S. W. 261; Orrick v. Ft. Worth (Tex. Civ. App.) 32 S. W. 443.

Appellants urge numerous other assignments of error, which we have carefully examined and here overrule.

The judgment of the trial court is affirmed.

### On Motions for Rehearing.

Appellants file separate motions and adopt each other's motion for rehearing. It is first presumed that we have injected a new issue in the case by the following statement from our opinion:

"Which conveyance was alleged to have been made in so far as the record title or notice to the city was concerned, before the said railroad companies acquired any title to a right of way over the strip of land in controversy."

The following is in fact appellee's pleading in this respect:

"That the said Jno. T. Flint, trustee, executed to the city of Marlin, a deed to the streets and alleys in Railroad addition to Marlin, which deed included a deed to Railroad street in Railroad addition to Marlin, and which deed was accepted by said city of Marlin."

We correct the matter because appellants complain, but it is wholly immaterial, since the case is not decided upon the question of notice as affected by the record title of the railroad company. The language used was merely our statement of what we thought appellee's pleading to be. Appellants contend that we hold the evidence sufficient, as a matter of law, to establish a dedication, and that it was such that no reasonable minds could differ as to the conclusion to be drawn. The opinion does not so hold. The opinion merely holds that, the testimony upon which appellee relies to sustain the findings of fact by the jury is practically undisputed, and that our only duty in the case was to determine whether or not it constituted sufficient evidence to support the jury's findings of fact.

[5; 6] Also complaint is made in this connection that we have ignored appellants' testimony, which is true to the extent that, since the jury ignored and rejected it, our province as an appellate court is to find the testimony most favorable to the verdict and judgment. It is urged that we erred in finding and using as a basis for a part of our opinion that appellant railroad company relied upon the memorandum contract of S. J. Parker, set out in our opinion, as a link in its chain of title to the strip of land in question; now contending that it did not so rely. Undoubtedly appellants are mistaken about this, for on pages 25 and 26 of their joint brief, under the heading, "Title of Railroad Company to Right of Way through Marlin," they list as a link in the railroad's chain of title this agreement, stating in connection therewith, "The above instruments were first introduced in evidence by plaintiff and were also introduced in evidence by the defendant." Appellee's counsel so understood that appellants were claiming this agreement as a link in the railroad's chain of title, for he answered that contention on page 60 of his brief filed herein. However, we did not then nor now consider it the important question to be decided in this case as to the source or sources of either the railroad company's or appellee's title to the property in question, since neither is trying to divest the other of title, but simply a determination of whether or not the strip of land in controversy had been dedicated as a public street in the city of Marlin.

[7, 8] We think the facts show that appellee had sufficient title to maintain this suit. True, the railroad company pleaded a superior title to the land, and that title having vested in it as a railroad, it could not dedicate a part of its right of way to the public for street purposes. But we do not take that view of the case under the facts adduced, but hold that under the findings of

fact by the jury and the undisputed facts a dedication had been made as set out in our opinion. Our view is still that, regardless from whom the railroad obtained title, a dedication of the particular land in controversy as a public street has been made in the manner set forth in our opinion. We find nothing inconsistent with the act of the joint trustee of the property owners and of the railroads in deeding the land in controversy to the railroads for use as a roadbed on the east side thereof, and deeding the balance on the west side of the track to the city of Marlin for use as a public street. Nor does the fact that he mapped and platted Railroad addition, showing the 70-foot 'strip, the west side of which is here in controversy, both as the right of way of appellant and as a public street in the city of Marlin, evidence any lack of good faith on the part of the trustee; but in fact is consistent with, and in keeping with, his duties as joint trustee of both the railroad and the property owners, first to convey a right of way to the railroad, and to plat and map an addition out of the trust properties, with necessary streets and alleys therein.

So, whether the land is a part of the Susan Grundy 11⅕ acre tract, or a part of the B. Coone 7⁹⁄₁₀ acre tract, the trustee represented at least B. Coone and the railroad company, and certainly had the right to deed a part of it to the railroad for right of way purposes, and at the same time deed it to the city of Marlin for public street purposes. He also had the right to make a map and plat of that addition, showing the railroad right of way on this 70-foot strip, and at the same time showing Railroad street to be a public street on this same strip of land, and in fact to do so would be to carry out his joint trust undertaking as written.

[9] In this connection, no person, so far as we can find from the testimony, has ever placed the field notes to the Susan Grundy 11⅕ acre tract actually on the ground, nor did any one ever actually survey and place the field notes on the ground to the B. Coone 7⁹⁄₁₀ acre tract. There is a general supposition by map makers that the Susan Grundy tract and the original town lot No. 27 are the same, but no one has ever actually tied the field notes of the Susan Grundy tract to lot 27 and found them to be the same, so far as the testimony in this record shows. The same situation is true as to the B. Coone 7⁹⁄₁₀ acre tract and the original town lot No. 5, but no one has ever, so far as we can ascertain from the testimony, tied the field notes of the B. Coone to lot No. 5 by actual survey. It is true that there are some discrepancies in the field notes in some of the deeds constituting appellee's chain of title as being deraigned from Susan Grundy, but the same facts as to any one ever actually placing

these deeds on the ground exist with reference thereto as exist with reference to the B. Coone and Susan Grundy tracts being actually surveyed on the ground by their field notes; and for this reason we do not feel it our duty to set aside the verdict of the jury finding that appellee's lots were a part of the Susan Grundy 11⁵⁄₁₀ acre tract, such not being the ultimate issue to be determined in this case.

For the reasons stated, the motions for rehearing are in all things overruled.